J-S24024-19

2019 PA Super 278

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LEONARD KNOX | : | |
| | : | |
| Appellant | : | No. 884 EDA 2018 |

Appeal from the Judgment of Sentence March 2, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s): CP-51-CR-0011694-2015

BEFORE: LAZARUS, J., McLAUGHLIN, J., and STEVENS, P.J.E.[*]

OPINION BY McLAUGHLIN, J.:                    **FILED SEPTEMBER 12, 2019**

Leonard Knox appeals from the judgment of sentence entered following his jury trial convictions for third-degree murder and possessing instruments of crime ("PIC").[1] Knox challenges the denial of his motion to suppress, the sufficiency and weight of the evidence, and the discretionary aspects of his sentence. We affirm.

Following the shooting death in November 2014 of Knox's stepbrother, Desmond Sinkler ("victim"), Knox accompanied Philadelphia police to a police station. The officers read him his ***Miranda***[2] rights, and he signed a form waiving them and gave a statement. They subsequently charged Knox in the

_____

[*] Former Justice specially assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2502(c) and 907, respectively.

[2] ***Miranda v. Arizona***, 384 U.S. 436 (1966).

killing. Between December 2014 and September 2017, the court found Knox incompetent to stand trial five times. However, in August 2016, correctional officers observed that Knox "communicated effectively, appropriately and directly with other inmates and on the phone with relatives." N.T. Sentencing, 3/2/18 at 18. Mental health evaluators determined that Knox was competent to stand trial and had been malingering with respect to his mental health.

Knox then filed a motion in December 2017 to suppress his statement to the police, alleging that he did not knowingly waive his *Miranda* rights because he was mentally ill and could not properly understand the rights he was waiving. Motion to Suppress, filed 9/24/17. The Commonwealth presented the following unchallenged evidence at the suppression hearing.

On the day after the shooting, Detective John Harkins and Detective James Burns went to Knox's address. N.T. Suppression, 12/15/17 at 9. Knox willingly went to the Homicide Unit with police and they informed him of his *Miranda* rights, reading them from a standard form. *Id.* at 11-16. Detective Harkins testified that Knox expressed that he understood his rights and was willing to talk with the detectives without an attorney present. *Id.* at 16-17. He then told Detective Harkins that he was inside the bar when somebody broke his window and was not present when the shooting occurred. *Id.* at 20.

While Knox was at the Homicide Unit, officers executed a search warrant on his home and car and found bloody clothing in his bedroom. *Id.* at 23-24. Detective Harkins confronted Knox with this new information, and Knox told him he "did it and he agreed to tell the truth." *Id.* at 24. Knox then changed

his story, apologized for not being truthful, and was read his *Miranda* rights again. *Id.* at 33. He again waived his right to an attorney and gave a statement claiming self-defense.

During both instances of questioning, Knox repeatedly asserted that he understood the *Miranda* rights that he was waiving and initialed forms indicating as much. *Id.* at 27-29. During questioning, Detective Harkins offered him bathroom breaks, food, and water. *Id.* 37-38. Detective Harkins explicitly asked Knox if he had any difficulty understanding him during the questioning and Knox answered in the negative. The detective testified that he asked, "Leonard, I also notice at times that you speak with a pronounced stutter. Do you have any difficulty understanding me?" *Id.* at 46. He said that Knox replied, "No, I just stutter a lot sometimes." *Id.*

Detective Harkins also asked Knox if he was under the influence of any drugs, alcohol, or prescription medication during the questioning. Knox responded: "I take prescription medicine. I take something for acid reflux, and I take Lizapan for bipolar disorder. I can understand you fine, though." *Id.* at 32.

The trial court determined that Knox had made a knowing, intelligent, and voluntary waiver. *Id.* at 50-55. The court consequently denied the motion to suppress and the case proceeded to trial.

The evidence at trial was as follows. In November 2014, Knox and the victim drove separately to a bar where the victim worked. On the way, Knox picked up a woman named Sophia. When they arrived at the bar, the victim

purchased a drink for Sophia, while Knox had his own drink. Knox and Sophia eventually returned to Knox's car. At that time, the bar was closed but some people remained inside. Outside, three gunshots rang out and the bar's occupants ran outside and found the victim bleeding on the ground. Medical practitioners at Temple University Hospital pronounced the victim dead at 2:58 a.m. Officer Raymond Andrejczak, who testified as an expert in ballistics identification, said that the three bullets found in the victim were 32-caliber bullets. N.T. Trial, 12/18/17 at 264.

On the night of the shooting, the victim's cousin, Termaine Heard-Blackwell, informed police at the hospital that Knox owned a .32-caliber revolver. *Id.* at 205-206. Blackwell testified that the victim did not carry a gun. *Id.* at 216. The victim's girlfriend, Trayeisha Smith, testified that she was at Knox's home the night before the shooting and she witnessed Knox remove a revolver from his pants. N.T. Trial, 12/19/17 at 53. She also testified that Knox had carried a gun in the past. *Id.* Knox's sister, Sarah Knox, testified that Knox did not carry a gun. *Id.* at 172.

The medical examiner, Dr. Albert Chu, testified that the victim suffered from three fatal gunshot wounds in the chest. N.T. Trial, 12/18/17 at 138-144. There were also wounds to the victim's forearm, thigh, and lower jaw. *Id.* at 144-146. Dr. Chu noted that there was no evidence of a close-range shot. *Id.* at 141-142.

Knox did not testify. The Commonwealth admitted into evidence Knox's statement to police, in which he claimed he shot the victim in self-defense as

the victim kicked out the front window of his car and attempted to assault him. *Id.* at 92-103. In that statement, Knox claimed that he pulled the gun from the victim's waistband and shot the victim with the victim's own gun. *Id.*

The jury found Knox guilty of third-degree murder and PIC. The trial court sentenced Knox to 20 to 40 years' incarceration for third-degree murder and imposed no further penalty for the PIC conviction. Knox filed a post-sentence motion, which the trial court denied, and this timely appeal followed.

Knox raises the following claims on appeal:

> (1) Did the trial court err in denying the motion to suppress [Knox's] statement?
>
> (2) Was the evidence insufficient to sustain a conviction for Third-Degree Murder and Conspiracy to Commit Robbery?[3]
>
> (3) Were the verdicts for both counts against the clear weight of the evidence?
>
> (4) Did the trial court abuse its discretion by sentencing [Knox] to twenty (20) to forty (40) years['] imprisonment?

Knox's Br. at 5.

## I.    Motion to Suppress

Knox contends that the suppression court erred in denying his motion to suppress. He claims that because he was found incompetent one month after his statement to police, "[i]t is clear that [Knox] did not properly understand his Constitutional rights[,]" and therefore the trial court should

---

[3] Knox was not charged with, nor convicted of, conspiracy to commit robbery and he does not mention such a charge elsewhere in the brief. Knox evidently intended to say the evidence was insufficient to sustain a conviction for PIC since that is what he was charged with and what he argued.

have suppressed his written statement. Knox's Br. at 12. He thereby claims that his **Miranda** waiver was not valid. **Id.** at 11. Knox also asserts that the trial court "exhibited clear prejudice against [him]." **Id.** at 12.

Our standard of review of the denial of a motion to suppress is limited to determining if the record supports the suppression court's factual findings and if the legal conclusions drawn from those facts are correct. **See Commonwealth v. Hoppert**, 39 A.3d 358, 361 (Pa.Super. 2012) (quoting **Commonwealth v. Jones**, 988 A.2d 649, 654 (Pa. 2010)). Here, the Commonwealth prevailed before the suppression court, so "we may consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole." **Jones**, 988 A.2d at 654. Where the record supports the suppression court's factual findings, "we are bound by these findings and may reverse only if the court's legal conclusions are erroneous." **Id.**

When determining the validity of a **Miranda** waiver, we employ a two-step inquiry. We first ask whether the waiver was voluntary in the sense of being the result of an intentional choice on the part of a defendant who was not subject to undue government pressure. **Commonwealth v. Mitchell**, 105 A.3d 1257, 1268 (Pa. 2014) (citing **Commonwealth v. Logan**, 549 A.2d 531, 537 (Pa. 1988) (opinion announcing the judgment of the Court)). If we conclude the waiver was voluntary, we then ask if the defendant was aware of the nature of the choice that he made by giving up his **Miranda** rights, *i.e.*, whether it was knowing and intelligent. **Id.** Knox does not challenge the

voluntariness of his statement in his brief. Thus, we will consider only whether it was knowing and intelligent.

The burden is on the Commonwealth to prove by a preponderance of the evidence that a *Miranda* waiver was knowing and intelligent. *See Commonwealth v. Lukach*, 163 A.3d 1003, 1011 (Pa.Super. 2017). There is no *per se* rule that a defendant is incapable of knowingly and intelligently waiving his rights whenever he asserts a mental disability. *See Commonwealth v. Sepulveda*, 55 A.3d 1108, 1136 (Pa. 2012) (citing *Logan*, 549 A.2d at 537).

Our Supreme Court's decision in *Logan* is instructive. In *Logan*, the Court concluded that regardless of the appellant's mental illness, the circumstances surrounding his confession showed that the waiver was "the product of a free, unconstrained, and rational choice of its maker." *Logan*, 549 A.2d at 537. The circumstances in *Logan* included that Logan was advised of his *Miranda* rights twice, he gave a full statement, which he reviewed and signed, and there was no evidence of police coercion. *Id.* at 536-37. Logan was able to do all of this even though he had a mental illness.

Here, the circumstances of Knox's confession, as demonstrated by the evidence at the suppression hearing, show that it was "the product of a free, unconstrained, and rational choice of [Knox]." *See id.* at 537. While he was found incompetent to stand trial approximately one month **after** giving his statement, the record does not establish that at the time he waived his *Miranda* rights he was incapable of understanding his rights and the

- 7 -

consequences of waiving those rights. The only evidence of record at the suppression hearing about Knox's condition at the time of the *Miranda* waiver is the testimony of Detective Harkins, who did not testify to any apparent difficultly Knox was having during the interview. To the contrary, Detective Harkins testified that Knox twice told him that he was not having any difficulty understanding him. N.T. Suppression, at 32, 46. Detective Harkins in fact said he read Knox his *Miranda* warnings twice, and Knox put his initial after each warning, asserting that he understood his *Miranda* rights. *Id.* at 27-31.

The fact that Knox was later found incompetent to stand trial is not dispositive of the question of his mental condition at the time he waived his *Miranda* rights, or of whether the waiver was knowing and intelligent. The Commonwealth's evidence at the suppression hearing supported the finding that Knox's waiver was proper. Accordingly, the trial court did not err. *See Logan*, 549 A.2d at 537.[4]

Knox also asserts that the trial court erred in denying the suppression motion because "the court put weight on the 'opinion' of prison correction officers." Knox's Br. at 11. This claim is meritless, as the record from the suppression hearing does not indicate that the trial court relied on the malingering determination in its decision to deny the motion to suppress.

_____

[4] *See also Commonwealth v. Mitchell*, 902 A.2d 430, 452 (Pa. 2006) (affirming finding that *Miranda* waiver was knowing, intelligent, and voluntary, despite defendant's psychotic conditions, where defendant presented no evidence at suppression hearing regarding his mental health, and police testified that defendant said he was in full control of his faculties when he gave his statement).

Knox also claims that the court erred in denying his suppression motion because "[t]he trial court exhibited clear prejudice" towards him, seemingly because the court found as a fact that Knox was malingering. *Id.* at 12. This argument is waived because he did not raise it at the trial court level in a recusal motion or otherwise. Pa.R.A.P. 302(a). Moreover, the fact that the trial court ruled against Knox on this issue is not evidence of bias or prejudice. *See Commonwealth v. Travaglia*, 661 A.2d 352, 367 (Pa. 1995) ("simply because a judge rules against a defendant does not establish any bias on the part of the judge against that defendant"). We affirm the trial court's denial of Knox's motion to suppress.

## II. Sufficiency of the Evidence

Knox maintains that the evidence was insufficient to sustain his convictions because his self-defense theory was never contradicted and the jury found him not guilty of the firearm charges. His argument is meritless.

When reviewing a challenge to the sufficiency of the evidence, we "must determine whether the evidence admitted at trial, and all reasonable inferences drawn therefrom, when viewed in a light most favorable to the Commonwealth as verdict winner, support the conviction beyond a reasonable doubt." *Commonwealth v. Feliciano*, 67 A.3d 19, 23 (Pa.Super. 2013) (quoting *Commonwealth v. Stokes*, 38 A.3d 846, 853-854 (Pa.Super. 2011)). "Where there is sufficient evidence to enable the trier of fact to find every element of the crime has been established beyond a reasonable doubt, the sufficiency of the evidence claim must fail." *Id.* (quoting *Stokes*, 38 A.3d

at 853). This standard applies equally where the Commonwealth's evidence is circumstantial. **Commonwealth v. Patterson**, 180 A.3d 1217, 1229 (Pa.Super. 2018).

In conducting this analysis, we do not weigh the evidence and substitute our judgment for that of the fact-finder. **See Commonwealth v. Snyder**, 870 A.2d 336, 350 (Pa.Super. 2005). Additionally, the Commonwealth's evidence need not preclude every possibility of innocence in order to prove guilt beyond a reasonable doubt. **Id.** The fact-finder is free to believe all, part, or none of the evidence. **Id.**; **Commonwealth v. Mollett**, 5 A.3d 291, 313 (Pa.Super. 2010).

### A.    Third-Degree Murder

Knox asserts that the evidence is insufficient to a support third-degree murder conviction because he acted in self-defense and the Commonwealth did not contradict Knox's claim of self-defense. Knox's Br. at 14. To sustain a conviction of third-degree murder, the Commonwealth must prove that the defendant killed another person with malice. **Commonwealth v. Hardy**, 918 A.2d 766, 774 (Pa.Super. 2007). Malice is defined as "exhibiting an 'extreme indifference to human life.'" **Commonwealth v. Ludwig**, 874 A.2d 623, 632 (Pa. 2005) (quoting **Commonwealth v. Young**, 431 A.2d 230, 232 (Pa. 1981)) (emphasis removed). A fact-finder may find malice not only in an intentional killing, "but also in an unintentional homicide where the perpetrator 'consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury.'" **Id.** (quoting **Young**, 431 A.2d at

232) (emphasis removed). A fact-finder may also infer malice "from the use of a deadly weapon upon a vital part of the victim's body." ***Commonwealth v. Thomas***, 54 A.3d 332, 335-336 (Pa. 2012); ***accord Commonwealth v. Briggs***, 12 A.3d 291, 307 (Pa. 2011) (holding that the use of a deadly weapon on the victim's chest was sufficient to prove malice).

Here, the Commonwealth presented sufficient evidence to prove, beyond a reasonable doubt, that Knox acted with malice when he fatally shot the victim in a vital part of his body, *i.e.*, his chest. ***Briggs***, 12 A.3d at 307. First, Knox admitted to shooting and killing the victim. N.T. Trial, 12/19/17 at 101. Second, the medical examiner, Dr. Chu, testified that the three fatal shots were to the victim's chest. N.T. Trial, 12/18/17 at 138-144. Last, shooting the victim three times in the chest was sufficient evidence of Knox's extreme indifference to the victim's life. ***Thomas***, 54 A.3d at 336.

Regarding Knox's claim that the Commonwealth failed to disprove self-defense, we disagree. "If a defendant introduces evidence of self-defense, the Commonwealth bears the burden of disproving the self-defense claim beyond a reasonable doubt." ***Commonwealth v. Houser***, 18 A.3d 1128, 1135 (Pa. 2011). The use of force against a person is justified "when the actor believes that such force is immediately necessary for the purpose of protecting himself against the use of unlawful force" by the other person. 18 Pa.C.S.A. § 505(a). A self-defense claim thus entails three elements:

> (1) [Defendant] reasonably believed that he was in imminent danger of death or serious bodily injury and that

- 11 -

it was necessary to use deadly force against the victim to prevent such harm;

(2) [Defendant] was free from fault in provoking the difficulty which culminated in the slaying; and

(3) [Defendant] did not violate any duty to retreat.

***Commonwealth v. Mouzon***, 53 A.3d 738, 740 (Pa. 2012) (quoting ***Commonwealth v. Samuel***, 590 A.2d 1245, 1247-48 (Pa. 1991)).

As above, Knox's self-defense claim consisted of his statement to police. He said that he was sitting in his car when the victim kicked out the driver's side window, and while still sitting in the car, he took the victim's gun from the victim's waistband and shot him.

The Commonwealth presented sufficient evidence to disprove this claim beyond a reasonable doubt. First, it presented the testimony of Dr. Chu, who said that the victim had gunshot wounds to the back of the thigh. When asked whether it would be possible for a car's occupant to shoot somebody in the back of the leg who was kicking out one of the car's windows, Dr. Chu responded that it was highly improbable:

> I have a hard time seeing how that could be. If he's kicking with that leg, the right leg, and he's being shot from someone in the car, I kind of have a hard time seeing how he would get a wound in the back of the leg, unless it's some weird karate kick or something.

N.T. Trial, 12/18/17 at 159-160. Dr. Chu also testified that the victim had no additional injuries that would be consistent with kicking out the window, and there was no stippling found on victim's body, which would have indicated a close-range shooting. ***Id.*** at 167-168.

- 12 -

The Commonwealth also presented evidence that the victim did not carry a gun, as Knox claimed, and that, to the contrary, it was Knox who carried a gun similar to the murder weapon. The victim's cousin, Blackwell, testified that the victim did not carry a gun but that Knox carried a .32-caliber gun. N.T. Trial, 12/18/17 at 205-206, 216. Blackwell's testimony in this regard was corroborated by the testimony of the victim's girlfriend establishing she knew Knox carried a gun and saw him with a revolver the night before the murder, and Officer Andrejczak's testimony that the victim was shot with a .32-caliber gun. *Id.* at 53, 264.

Finally, the fact that Knox told police that he acted in self-defense only after first giving what he concedes was a false story seriously undermined the credibility of his self-defense claim. A similar scenario arose in ***Commonwealth v. Ward***, 188 A.3d 1301 (Pa.Super. 2018). There, the defendant told police three different stories regarding his lack of involvement in the shooting before admitting to the shooting, but asserting self-defense. This Court held that the jury could infer guilt from the defendant's prior attempts to conceal involvement. Ward, 188 A.3d at 1306; ***see also Commonwealth v. Carbone***, 574 A.2d 584, 589-90 (Pa. 1990) (finding where physical and testimonial evidence negate defendant's story, a jury may consider the intent of defendant's narrative to mislead police and indicative of guilt). Viewing the evidence in the light most favorable to the Commonwealth as verdict-winner, we conclude the evidence was sufficient to sustain third-

degree murder and the Commonwealth sufficiently disproved Knox's self-defense claim.

### B. PIC

Knox maintains that the evidence was insufficient to sustain his PIC conviction because he used the weapon in self-defense and did not have the intent to employ it criminally. Knox's Br. at 15. He also argues the evidence was insufficient because the jury acquitted him of the firearm charges. *Id.*

To sustain a PIC conviction, the Commonwealth must prove that the defendant possessed an "instrument of crime with the intent to employ it criminally." 18 Pa.C.S.A. § 907(a).

As discussed above, the Commonwealth disproved Knox's self-defense claim and therefore his claim that the evidence was insufficient because he used the firearm in self-defense fails. The evidence sufficiently established that Knox used a .32-caliber handgun with the intent to employ it criminally, *i.e.*, to shoot the victim.

Knox's argument that his not-guilty verdict for the firearm charges fatally undermines his PIC conviction is also unavailing. An acquittal does not constitute a finding that any particular element of the crime was unproven, and inconsistency in the verdicts does not require the overturning of the conviction. *See Commonwealth v. Moore*, 103 A.3d 1240, 1247 (Pa. 2014).

This Court has consistently reaffirmed this doctrine:

> When an acquittal on one count in an indictment is inconsistent with a conviction on a second count, the court looks upon the acquittal as no more than the jury's

assumption of a power which they had no right to exercise, but to which they were disposed through lenity. Thus, this Court will not disturb guilty verdicts on the basis of apparent inconsistencies as long as there is sufficient evidence to support the verdict.

*Commonwealth v. Frisbie*, 889 A.2d 1271, 1273 (Pa.Super. 2005) (quoting *Commonwealth v. Petteway*, 847 A.2d 713, 718 (Pa.Super. 2004)). Accordingly, the firearm acquittals are immaterial to the PIC conviction and there was sufficient evidence to sustain a PIC conviction.

## III.  Weight of the Evidence

Knox also challenges the weight of the evidence. In support of this argument, Knox again relies on his self-defense theory and the jury's not-guilty verdicts for the firearm charges. He maintains that "no evidence was presented to refute [Knox's] statement that he killed his step-brother in self-defense" and that the trial testimony that his window was not broken when he left the bar substantiates his allegation that the victim kicked out his window. Knox's Br. at 15

Our review of a weight claim is limited to reviewing the trial court's exercise of its discretion. *Commonwealth v. Widmer*, 744 A.2d 745, 753 (Pa. 2000) (citing *Commonwealth v. Brown*, 648 A.2d 1177, 1189 (Pa. 1994)). We do not review *de novo* the underlying question of whether a verdict was against the weight of the evidence. *Id.* The trial judge may not grant a new trial on the basis of a weight claim because of a mere conflict in the testimony or because the judge would have arrived at a different verdict. *Id.* at 752. Rather, the trial court may only grant a new trial on the basis of a

- 15 -

weight claim when the jury's verdict is "so contrary to the evidence as to shock one's sense of justice." **Brown**, 648 A.2d at 1189 (quoting **Thompson v. City of Phila.**, 493 A.2d 669, 672 (Pa. 1985)).

Here, the jury was presented with Knox's self-defense claim through his second statement to police. The jury rejected this claim and found Knox guilty of third-degree murder and PIC. As the trial court noted, such verdicts were not objectively shocking, when compared to the substantial eyewitness and forensic evidence presented at trial:

> [W]hatever value [Knox's] self-defense claim had in the instant matter, such evidence is far outweighed by forensic evidence demonstrating that [Knox] was outside the car when he shot the victim and eyewitness testimony from Heard-Blackwell and Smith establishing that [Knox] owned and possessed the firearm used to murder the victim.

Trial Court Opinion, filed 5/17/18, at 13.

Regarding the weight of the evidence as to his PIC conviction, Knox maintains that "[t]he jury clearly believed that the firearm belonged to decedent . . . as [Knox] was acquitted" of the firearm charges. Knox's Br. at 16. As explained above, the jury's not-guilty verdicts are immaterial to the whether the PIC conviction was against the weight of the evidence. The trial court did not abuse its discretion in denying Knox's weight claim.

## IV. Discretionary Aspects of Sentence

Knox contends that the trial court imposed an excessive sentence for third-degree murder. He argues that the trial court improperly focused solely on the seriousness of the offense. He also argues that the trial court exhibited

bias towards him when it mentioned the mental health evaluator's determination that Knox was malingering with respect to his mental health.

Before this Court may exercise jurisdiction over a challenge to the discretionary aspects of a sentence, we must determine four things:

> (1) Whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903;
>
> (2) Whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720;
>
> (3) Whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and
>
> (4) Whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.A. § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa.Super. 2014).

Here, Knox has satisfied all four factors. His appeal is timely, he preserved his claim in a post sentence motion, and his brief contains a 2119(f) statement. He also presents a substantial question in claiming that the trial court focused solely on the seriousness of the offense and that the court relied on improper factors. *Commonwealth v. Lewis*, 45 A.3d 405, 411 (Pa.Super. 2012) (*en banc*) (finding that allegations that the sentencing court focused exclusively on the seriousness of the crime raises a plausible argument that the court did not follow the requirements of section 9721 of Sentencing Guidelines); *see also Commonwealth v. Downing*, 990 A.2d 788, 792 (Pa.Super. 2010) (holding that a claim that the court relied on improper factor raises substantial question). We now address the merits of Knox's clam.

When imposing a sentence, the trial court must take into account the protection of the public, the gravity of the offense, the rehabilitative needs of the defendant, and the provisions of the Sentencing Guidelines. **See** 42 Pa.C.S.A. § 9721(b). Sentencing is the responsibility of the trial court and we will not disturb the sentence unless there is a manifest abuse of discretion. **See Commonwealth v. Antidormi**, 84 A.3d 736, 760 (Pa.Super. 2014). To establish a manifest abuse of discretion, the appellant must show a misapplication of the law, or partiality, prejudice, bias, or ill will that led to the unreasonable decision. **See Commonwealth v. Anderson**, 830 A.2d 1013, 1018 (Pa.Super. 2003). Further, when the court had a Pre-Sentence Investigation report (PSI), we presume that the court was aware of all relevant sentencing factors. **See Commonwealth v. Ventura**, 975 A.2d 1128, 1135 (Pa.Super. 2009).

Knox fails to substantiate his claim that the sentencing court improperly focused solely on the seriousness of the offense. The sentencing court heard from two relatives of the victim who said that they forgave Knox, and it reviewed the PSI. N.T. Sentencing, 03/02/18 at 11-24, 26-33, 46. The court noted that it took the forgiveness of the victim's family members into account. Considering all mitigating factors and not relying solely on the seriousness of the offense, the court rejected the Commonwealth's recommendation for a longer sentence. **Id.** at 49. The claim is meritless.

Knox's claim that the trial court considered improper factors in the form of considering Knox's malingering is also meritless. We give great deference

to the trial court's determination of competency because the trial court personally observes the defendant. ***See Commonwealth v. Sanchez***, 907 A.2d 477, 490 (Pa. 2006) (citing ***Commonwealth v. Chopak***, 615 A.2d 696, 700 (Pa. 1992)). Further, when making a competency determination, the trial court may resolve conflicts in the testimony of expert witnesses, accepting one opinion over another where the record adequately supports it. ***Id.*** at 490.

The trial court was well within its discretion in considering Knox's malingering having personally observed Knox on numerous occasions during the multiple hearings that were held regarding his competency. ***See supra*** Part I; ***see also Sanchez***, 907 A.3d at 490. Additionally, a mental health evaluator twice made the determination that Knox was malingering with respect to his mental health. Knox's malingering went to his character which the trial court was required to consider for purposes of sentencing. ***See Commonwealth v. Griffin***, 804 A.2d 1, 10 (Pa.Super. 2002). The trial court did not abuse its discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/12/19