J-A09043-20

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA, : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
Appellee :
:
v. :
:
DEREK VASOS, :
:
Appellant : No. 467 WDA 2018

Appeal from the Judgment of Sentence January 25, 2018
in the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0002087-2017

BEFORE: SHOGAN, J., MURRAY, J. and STRASSBURGER, J.*

MEMORANDUM BY STRASSBURGER, J.: **FILED JUNE 09, 2020**

Derek Vasos (Appellant) appeals from the January 25, 2018 judgment

of sentence of 15 to 30 years of incarceration, plus ten years of probation,

after a jury found Appellant guilty of third-degree murder. Upon review, we

affirm.

The trial court provided the following factual summary.

On February 5, 2017, at approximately [3:11[1]] a.m.,
[emergency medic personnel and] police officers with the City of
Pittsburgh Bureau of Police responded to the 200 block of
Copperfield Avenue in the vicinity of the Carrick Literary Club
[(the Club)] for a report of a male who had been shot in the
chest. Upon arrival, officers learned that the victim, later
identified as 28-year-old Donald George Ketter, Junior
([Victim]), had been transported by ambulance to UPMC Mercy

---

[1] We note that there was some confusion surrounding times because the
video footage was not synced with real time. The time of 3:11 a.m. is based
upon when the medics were dispatched to the scene. N.T., 10/23-30/2017
(Vol. I), at 76.

---

* Retired Senior Judge assigned to the Superior Court.

Hospital where he was pronounced deceased []. Dr. Abdulrezzak Shakir of the Allegheny County Medical Examiner's Office conducted an autopsy of Victim several hours later, and determined that the cause of death was a gunshot wound to the chest and the manner of death was homicide. [The toxicology screen revealed the presence of cocaine and that Victim's whole blood ethanol was 0.177 percent.]

As part of their homicide investigation, detectives interviewed several witnesses and obtained surveillance video footage from the [Club]. Upon reviewing the video footage and speaking with witnesses, detectives were able to identify the individual who had fatally shot Victim as Appellant.[2] One witness positively identified Appellant and advised police that Appellant was a regular patron of the Club. This witness also told police that Appellant was present at the Club on the morning of the shooting.

Detectives also interviewed another witness, Michael Nash[], who told police that he was working in his capacity as a driver for the ridesharing company Uber on the morning of February 5, 2017, and that he had received a notification for a pickup request from an individual by the name of Derek at approximately 2:30 a.m. After some initial confusion as to the correct pickup location had been resolved, Nash made contact with Appellant in the vicinity of the Club several minutes later.

Nash advised investigators that, upon entering the vehicle, Appellant instructed him to drive quickly. [After Nash completed certain necessary tasks on his Uber phone application, he began to drive forward slowly. Within moments, Nash's forward progress was impeded by Victim, who was stumbling in the middle of the road, walking in the same direction that the Uber was traveling. Nash continued to drive slowly behind Victim, waiting for him to move to the side of the road so that Nash could continue driving on Copperfield Avenue. Appellant reached over and honked the Uber's horn, prompting Victim to turn around.] Nash told police that he then observed Victim approach his vehicle and that Appellant and Victim began to argue through

_____

[2] The video footage showed the entrance of the Club and the individuals involved in this case, but did not capture the area where the shooting occurred.

the open window of his vehicle. Nash testified that, as he attempted to maneuver his vehicle around Victim, who was standing just to [the] right of his vehicle, he heard a loud "bang," which Nash believed to be a gunshot. [Nash attempted to drive away from the sound of the gunshot, but the vehicle's transmission had slipped into neutral. Appellant told Nash to go, and Nash placed the vehicle into drive.] At that time, Nash drove off with Appellant in his vehicle, with Appellant directing him where to drive. Nash told investigators that, at one point, he looked over at Appellant and observed Appellant disassembling what appeared to be a semiautomatic handgun[, tossing the magazine and chambered bullet out of the window].

After driving for approximately ten [] minutes, Appellant instructed Nash to stop the vehicle several blocks from the location of the shooting. Upon exiting Nash's vehicle[,] Appellant asked Nash, "what happened?" Nash responded by saying he did not see anything and did not wish to have any further involvement in the situation. According to Nash, Appellant responded by saying "yes" while drawing his fingers across his throat, which Nash interpreted as a threat. Prior to concluding their interview of Nash, police presented him with a sequential photo array. After viewing a series of photographs, Nash positively identified Appellant as the individual who was in his vehicle during the incident near the Club on February 5, 2017.

During their investigation, police also interviewed a third witness, Jonathan Kalsek[], who told police that he was parked outside of the Club on the morning of February 5, 2017, just prior to the shooting. Kalsek informed police that, as he began to drive away, he observed a vehicle – which would later be identified as the vehicle in which Appellant was a passenger – stopped in the roadway on Copperfield Avenue. [Kalsek honked his horn at the stopped vehicle. Victim responded to Kalsek by putting his hands up and saying something along the lines of "hold on, I got it."] Kalsek advised police that he observed the Victim [walk towards] the passenger side of the vehicle[, not acting in a crazy manner,] when he [saw the barrel of a gun protrude from the passenger window and] heard a gunshot and, moments later, observed the blood-soaked Victim approach his vehicle before collapsing to the ground. [Kalsek reversed his vehicle up the street to alert nearby police to the shooting.]

Trial Court Opinion, 7/3/2019, at 2-4 (some party designations altered). It was undisputed that Appellant and Victim did not know each other and did not speak to each other prior to the confrontation on Copperfield Avenue.

As a result of the foregoing, Appellant was charged with one count each of criminal homicide and intimidation of a witness, relating to Nash. Appellant proceeded to a jury trial on October 23-30, 2017. The Commonwealth presented, *inter alia*, testimony from Nash and Kalsek to establish the aforementioned facts. The jury viewed video footage from the Club and heard testimony from Victim's girlfriend. She testified that following an argument, Victim went to the Club. Shortly before the shooting, he sent her the following text messages, to which she did not respond.

- "You know what?" (2:57 a.m.)

- "Fuck it." (2:57 a.m.)

- "on everything that I love" (2:58 a.m.)

- "I see your little bigger [*sic*]" (2:58 a.m.)

- "I will knock him out" (2:59 a.m.)

- "just for you" (2:59 a.m.)

N.T., 10/23-30/2017 (Vol. I), at 197. She testified that she believed these text messages referred to her ex-boyfriend, Brad Szablewski, who was also at the Club that evening. N.T., 10/23-30/2017 (Vol. I), at 192, 200.

At the conclusion of the Commonwealth's case-in-chief, the trial court granted Appellant's motion for judgment of acquittal as to the intimidation of witness charge, but denied it as to the charge of criminal homicide.

Appellant testified in his own defense, raising a claim of self-defense. According to Appellant, he honked the horn because the Uber was trapped between Victim, who was walking in the middle of the road in front of the Uber, and Kalsek's vehicle, which was behind the Uber. Appellant testified that Victim became enraged, wrapped his belt around his hand, and charged the open passenger side window, cursing at Appellant, as Victim fished in his pockets for another weapon. Appellant testified that he feared for his life when Victim reached through the window and Nash failed to drive away. In response, Appellant leaned over into the driver's seat where Nash was sitting, used his non-dominant hand to remove his firearm from his coat pocket, closed his eyes, and with the firearm still in his non-dominant hand near his coat pocket, fired one shot in the direction of Victim. *See* N.T., 10/23-30/2017 (Vol. III), at 508-605.

The Commonwealth did not offer rebuttal evidence. During closing arguments, Appellant's counsel argued that Appellant acted in self-defense when Victim, drunk and high on cocaine, attacked Appellant as Appellant sat in the Uber vehicle. Counsel intimated that, based on Victim's text messages to his girlfriend, he had potentially mistaken Appellant for Szablewski. *See id.* at 613-15. After the trial court instructed the jury on

- 5 -

the crimes of first-degree murder and third-degree murder, and the defense of justification, the jury found Appellant guilty of third-degree murder. Sentencing was deferred to allow for the preparation of a pre-sentence investigation (PSI) report.

On January 25, 2018, Appellant was sentenced to a term of 15 to 30 years of incarceration, followed by ten years of probation.[3]  On January 31, 2018, Appellant filed a post-sentence motion seeking to reduce his sentence to a term of 6 to 20 years.  Appellant did not set forth any alleged claims of error, but rather sought a reduced sentence in order to be able to participate in the raising of his children and to pay back his debt to society by paying any damages owed to Victim's family as a result of their wrongful death and survival action.  **See** Motion to Modify Sentence, 1/31/2018; **see also** N.T., 3/5/2018, at 14-15.  A hearing was held on March 5, 2018, to allow Appellant the opportunity to present additional evidence regarding his relationship with his children and the pending action filed by Victim's family. Considering all of the evidence presented at the sentencing hearing and the post-sentence motion hearing, the trial court determined that the sentence it had imposed was appropriate, and denied Appellant's post-sentence motion.

---

[3] The sentencing guidelines provided for a mitigated range sentence of 6½ years, and a standard range sentence of 7½ to 20 years.  Sentencing Guidelines, 1/25/2018 (converted from months to years).  Appellant's minimum sentence of 15 years was in the standard range of the sentencing guidelines.  **See** Pa. Code § 303.16(a)(4) ("All numbers in sentence recommendations suggest months of minimum confinement pursuant to 42 Pa.C.S. [§§] 9755(b) and 9756(b).)"

This timely-filed notice of appeal followed.[4]  On appeal, Appellant presents four issues for our review, which we have reorganized for ease of disposition.

1. Was the evidence insufficient to sustain the verdict of third degree murder where the Commonwealth failed to disprove self-defense and did not meet its burden to prove malice beyond a reasonable doubt?

2. Did the trial court err by refusing to instruct the jury on "imperfect self-defense" voluntary manslaughter?

3. Is a new trial warranted where the trial court disallowed evidence of [V]ictim's aggressive character by relying upon a misapplication of the law?

4. Did the court abuse its discretion by sentencing Appellant to 15-30 years in prison by failing to consider all relevant factors including that Appellant was not a future threat to society and that he expressed extreme remorse; and by imposing a sentence that did not take into account Appellant's rehabilitative needs?

Appellant's Brief at 5 (suggested answers omitted and capitalization altered).

**Sufficiency of the Evidence**

Appellant's first claim challenges the sufficiency of the evidence.  The standard we apply in reviewing the sufficiency of the evidence is whether

> viewing all the evidence admitted at trial in the light most favorable to the [Commonwealth as the] verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need

---

[4] Both Appellant and the trial court have complied with the mandates of Pa.R.A.P. 1925.

- 7 -

not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.

*Commonwealth v. Gonzalez*, 109 A.3d 711, 716 (Pa. Super. 2015) (citation omitted).

## 1. Self-defense

We begin with Appellant's claim that the Commonwealth failed to disprove self-defense beyond a reasonable doubt. *See* Appellant's Brief at 34.

According to our Supreme Court, the justified use of deadly force requires:

a) the actor was free from fault in provoking or continuing the difficulty which resulted in the use of deadly force; b) the actor must have reasonably believed that he was in imminent danger of death or serious bodily injury, and that there was a necessity to use such force in order to save himself or others therefrom; and c) the actor did not violate any duty to retreat or to avoid the danger.

The defendant has no "burden to prove" his self-defense claim. *Commonwealth v. Torres*, [] 766 A.2d 342, 345 ([Pa.] 2001). The Supreme Court explained the evidentiary burdens as follows:

While there is no burden on a defendant to prove the [self-defense] claim, before that defense is properly at issue at trial, there must be some evidence, from whatever source to justify a finding of self-defense. If there is any evidence that will support the claim, then the issue is properly before the fact finder.

*Id.* (internal citations omitted).  If the defendant properly raises "self-defense under Section 505 of the Pennsylvania Crimes Code, the burden is on the Commonwealth to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." ***Commonwealth v. McClendon***, 874 A.2d 1223, 1229-30 (Pa. Super. 2005).

> The Commonwealth sustains this burden if it establishes at least one of the following: 1) the accused did not reasonably believe that he was in danger of death or serious bodily injury; or 2) the accused provoked or continued the use of force; or 3) the accused had a duty to retreat and the retreat was possible with complete safety.

***Commonwealth v. Hammond***, 953 A.2d 544, 559 (Pa. Super. 2008). The Commonwealth must establish only one of these three elements beyond a reasonable doubt to insulate its case from a self-defense challenge to the evidence.  The Commonwealth can negate a self-defense claim if it proves the defendant did not reasonably believe he was in imminent danger of death or great bodily injury and it was necessary to use deadly force to save himself from that danger.

> The requirement of reasonable belief encompasses two aspects, one subjective and one objective. First, the defendant must have acted out of an honest, *bona fide* belief that he was in imminent danger, which involves consideration of the defendant's subjective state of mind. Second, the defendant's belief that he needed to defend himself with deadly force, if it existed, must be reasonable in light of the facts as they appeared to the defendant, a consideration that involves an objective analysis.

***Commonwealth v. Mouzon***, [] 53 A.3d 738, 752 ([Pa.] 2012).

***Commonwealth v. Smith***, 97 A.3d 782, 786-87 (Pa. Super. 2014) (some citations omitted).

On appeal, Appellant argues "the Commonwealth presented insufficient evidence to disprove [Appellant's] testimony concerning how the

shooting occurred" and failed to prove beyond a reasonable doubt that Appellant did not act in self-defense. Appellant's Brief at 35-37. Specifically, Appellant argues that the Commonwealth failed to prove that Appellant was the aggressor, that he had a "duty to retreat from a car in which he was a passenger[,]" or that he did not believe reasonably that he was in danger of death or serious bodily injury. *Id.* at 35-36.[5]

The trial court concluded that after viewing all of the evidence offered, the jury, which was free to believe some, all, or none of the evidence presented, "found that the Commonwealth had satisfied its burden of proof – both with respect to third[-]degree murder and [Appellant's] self-defense claim." Trial Court Opinion, 7/3/2019, at 7.

As detailed *supra*, Appellant testified to a version of the shooting where he was trapped in a non-moving vehicle as Victim, enraged, charged the Uber vehicle as he cursed and threatened Appellant. Appellant testified

---

[5] Within this argument section, Appellant claims that the trial court erred by not instructing the jury that "Pennsylvania law recognizes that an actor is presumed to have reasonable belief that deadly force is immediately necessary to protect against death or serious bodily injury when another individual is in the process of unlawfully entering or attempting to enter a dwelling, residence or occupied vehicle." Appellant's Brief at 36 (citing 18 Pa.C.S. § 505(b)(2.1)(i) and (2.5)) (emphasis omitted). Appellant waived any such claim by failing to request such an instruction or object to its absence. **See Commonwealth v. Moury**, 992 A.2d 162, 178 (Pa. Super. 2010) (citations omitted) ("A specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver. Generally, a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary.").

that Victim, while holding a weapon and grabbing another weapon from his pocket, reached through the partially-opened passenger window. Appellant testified that he feared for his life, and ducked practically into Nash's seat, pulling out his firearm from his coat pocket with his non-dominant hand. Without extending the firearm towards Victim, Appellant shot once, with his eyes closed, in the direction of Victim.

It is well-settled that "issues of whether a defendant acts out of an honest, *bona fide* belief and whether such belief was reasonable are questions properly resolved by the finder of fact." ***Commonwealth v. Hill***, 629 A.2d 949, 952 (Pa. Super. 1993). Here, the Commonwealth called into doubt Appellant's version of events by presenting testimony from Kalsek and Nash. Their testimony supported a finding that Appellant did not reasonably believe he was in danger of imminent death or serious bodily injury. Specifically, Kalsek testified that Victim was not acting crazy when he approached the passenger side of the Uber, and that he had his hands in the air. According to Kalsek and Nash, Victim remained on the side of the vehicle; he did not attempt to enter through the partially opened passenger window. Nash testified that he was attempting to maneuver the vehicle around Victim as he stood to the side of the vehicle when Appellant shot Victim. Notably, Nash did not testify that Appellant moved into the area of his seat immediately prior to shooting Victim, and Kalsek testified to seeing

the muzzle of Appellant's weapon outside the passenger window prior to the shooting.

"Although the Commonwealth is required to disprove a claim of self-defense arising from any source beyond a reasonable doubt, a jury is not required to believe the testimony of the defendant who raises the claim." *Commonwealth v. Bullock*, 948 A.2d 818, 824 (Pa. Super. 2008). Accordingly, the testimony presented by the Commonwealth, which the jury clearly credited, was sufficient for the jury to conclude that Appellant did not reasonably believe he was in danger of imminent death or serious bodily injury. Thus, this claim for relief fails.

Because the evidence was sufficient to show that Appellant's belief that he was in danger was unreasonable, the Commonwealth satisfied its burden to prove that Appellant's shooting the Victim was not justifiable self-defense. As the Commonwealth is only required to satisfy one element of the aforementioned test, we hold that the Commonwealth sustained its burden "to prove beyond a reasonable doubt that the defendant's act was not justifiable self-defense." *Smith*, 97 A.3d at 787.

## 2. Malice

We next turn to Appellant's claim that the Commonwealth failed to prove malice. Appellant's Brief at 39.

> To sustain a conviction of third-degree murder, the Commonwealth must prove that the defendant killed another person with malice. Malice is defined as exhibiting an extreme indifference to human life. A fact-finder may find malice not

only in an intentional killing, but also in an unintentional homicide where the perpetrator consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury. A fact-finder may also infer malice from the use of a deadly weapon upon a vital part of the victim's body.

*Commonwealth v. Knox*, 219 A.3d 186, 195 (Pa. Super. 2019) (citations and quotation marks omitted).

Appellant argues that the Commonwealth failed to prove malice because the evidence presented "support[ed] a finding that [Appellant] acted out of fear he was in danger of death or serious bodily injury" and thus his "state of mind did not manifest malice[.]" Appellant's Brief at 41.[6]

The trial court observed that Appellant did not dispute shooting at Victim or allege that the shooting was unintentional or the result of an accident. The trial court determined that the Commonwealth presented sufficient evidence to support Appellant's third-degree murder conviction because "a jury may properly conclude that pointing a loaded firearm at a victim's chest and pulling the trigger satisfies the malice requirement

---

[6] Appellant argues that if the jury assessed his fear of death or serious bodily injury as unreasonable, then the verdict should have been voluntary manslaughter, not third-degree murder. Appellant's Brief at 42. In so arguing, Appellant complains that the trial court "inexplicably" did not instruct the jury on voluntary manslaughter. As discussed at length *infra*, Appellant neither sought a voluntary manslaughter jury instruction, nor objected when none was offered, and therefore has waived any claim that the trial court should have instructed the jury on voluntary manslaughter. *See Moury*, 992 A.2d at 178.

necessary to sustain a conviction for third[-]degree murder." Trial Court Opinion, 7/3/2019, at 8-9.

On appeal, Appellant argues that the deadly-weapon inference is insufficient to prove malice because Appellant was defending himself, relying on *Commonwealth v. Austin*, 575 A.2d 141 (Pa. Super. 1990). Appellant's Brief at 44-45. In *Austin*, this Court affirmed the order granting Austin's motion to quash a murder charge. With regard to first-degree murder and third-degree murder, the Commonwealth argued that it had provided *prima facie* evidence of Austin's specific intent to kill and malice based on Austin's use of a knife to stab the victim, resulting in his death. The preliminary hearing judge found that Austin did not intend to direct the knife into the victim's body. This Court agreed, noting as follows with regard to the deadly weapon inference.

> The proper focus for determining the mental component of the crime is how appellant intended to use the knife or what caused the knife to come into contact with a vital area of a human body. A specific intent to kill and malice are properly implied when a deadly weapon is **directed** to a vital part of the body.

575 A.2d at 144 (citations omitted).

Unlike in *Austin*, Appellant did not swing a gun around in self-defense and accidentally kill Victim. First, the jury found that Appellant was not acting in self-defense. Second, Appellant intended to shoot Victim: he pointed a firearm at Victim's chest and pulled the trigger. Thus, viewing the evidence in the light most favorable to the Commonwealth as verdict winner,

- 14 -

the Commonwealth presented sufficient evidence to establish the element of malice. **See Knox**, 219 A.3d at 195-97 (concluding evidence was sufficient to establish malice and disprove self-defense where Knox fatally shot victim in chest three times, admitted to shooting victim, and Knox's version of events was unbelievable). Appellant unquestionably and "consciously disregarded an unjustified and extremely high risk that his actions might cause death or serious bodily injury" when he pointed his firearm at Victim and pulled the trigger. **Id.** at 195. Accordingly, Appellant is not entitled to relief on this claim.

## Voluntary Manslaughter Jury Instruction

We next consider Appellant's claim that the trial court erred in refusing to instruct the jury on voluntary manslaughter. **See** Appellant's Brief at 46. "[O]ur standard of review when considering the denial of jury instructions is one of deference—an appellate court will reverse a court's decision only when it abused its discretion or committed an error of law." **Commonwealth v. Leaner**, 202 A.3d 749, 782-83 (Pa. Super. 2019) (citation omitted).

> "[U]nreasonable belief voluntary manslaughter," sometimes loosely referred to as "imperfect self-defense," will only justify a voluntary manslaughter instruction in limited circumstances: where a defendant held an unreasonable rather than a reasonable belief that deadly force was required to save [his or her] life," and "all other principles of justification under 18 Pa.C.S. § 505 [ ] have been met.

*Commonwealth v. Sanchez*, 82 A.3d 943, 980 (Pa. 2013) (some citations and quotation marks omitted).

On appeal, Appellant avers that "[d]uring the discussion regarding jury instructions, the trial judge emphatically stated his opinion that, "'[v]oluntary manslaughter isn't in this case.'" Appellant's Brief at 48 (citing N.T., 10/23-30/2017 (Vol. III), at 607). According to Appellant, he preserved his claim that the trial court erred in refusing to instruct on voluntary manslaughter by raising it in his Pa.R.A.P. 1925(b) statement. *Id.*

Looking at the trial court's statement in context reveals the following. At the conclusion of testimony, the trial court excused the jury to return on Monday and be charged. N.T., 10/23-30/2017 (Vol. III), at 605-06. The trial court asked for points for charge at the same time as Appellant requested to approach at sidebar on a separate matter. *Id.* at 606. The following exchange then occurred.

> THE COURT: After you answer my question.
>
> APPELLANT'S COUNSEL: I am sorry. Do we have the points for charge?
>
> THE COURT: Yes.
>
> APPELLANT'S COUNSEL: We will have them. We don't have them right now, Your Honor. We thought that since we were charging and closing on Monday --
>
> ASSISTANT DISTRICT ATTORNEY: Likewise, Your Honor. I don't have mine either.
>
> THE COURT: Okay.
>
> APPELLANT'S COUNSEL: May we approach, Your Honor?

- 16 -

THE COURT: Certainly.

(Whereupon, the following was held at sidebar.)

APPELLANT'S COUNSEL: Your Honor, as a procedural matter, I am going to request a motion for acquittal for first[-]degree murder. I recognize that, in fact, previous testimony was to a vital organ. I believe that the testimony that was presented today [by Appellant] would have this either as a third[-]degree murder case or voluntary manslaughter.

THE COURT: Voluntary manslaughter isn't in this case.

APPELLANT'S COUNSEL: I am not arguing for the voluntary manslaughter and I am not arguing for --

THE COURT: No. That motion will be denied.

APPELLANT'S COUNSEL: Thank you, Your Honor.

*Id.* at 606-07 (attorney designations altered).

The sidebar concerning the motion for judgment of acquittal concluded, and the parties re-approached for a sidebar discussion on how the trial court intended to instruct the jury on the dismissal of the intimidation of witness charge. *Id.* at 608. The trial court replied as follows, "All I am going to say is that based upon all the evidence that is being presented, the only question that you are going to consider is the question of criminal homicide and one of three final verdicts, not guilty, guilty of first or guilty of third."[7] *Id.* The attorneys thanked the trial court, and the proceedings adjourned for the day.

---

[7] We note that although the trial court provided the jury broad instructions on how a defendant charged generally with criminal homicide could be found not guilty or guilty of first-degree murder, second-degree murder, third-

*(Footnote Continued Next Page)*

Our review of the record reveals that the trial court's statement that "[v]oluntary manslaughter isn't in this case[,]" which was relied upon by Appellant for preservation of this issue, was not in response to a request for a voluntary manslaughter jury instruction. It was in response to a motion for judgment of acquittal as to first-degree murder, after defense counsel argued that Appellant's testimony supported a conviction of third-degree murder or voluntary manslaughter. When the trial court noted that voluntary manslaughter was not part of the case, Appellant agreed and stated that he was not arguing voluntary manslaughter. Thereafter, the Commonwealth and Appellant submitted written proposed points for charge. Regarding the charge of criminal homicide, Appellant submitted proposed instructions for first-degree murder, third-degree murder, and the defense of justification. *See* Appellant's Jury Charge Law on Rules for First-Degree Murder, Third-Degree Murder, and Justification, 10/30/2017.

Contrary to Appellant's assertion, Appellant did not request a voluntary manslaughter instruction in his written points for charge, during any discussions regarding proposed jury instructions, or anywhere else in the record. Moreover, Appellant did not object to the trial court's jury instructions, or request any additions or corrections, when the trial court did

*(Footnote Continued)* ───────────

degree murder, voluntary manslaughter, or involuntary manslaughter, the trial court specifically instructed the jury that **this Appellant** charged with criminal homicide could only be found **not guilty, guilty of first-degree murder, or guilty of third-degree murder**. *See* N.T., 10/23-30/2017 (Vol. I), at 14-15; N.T., 10/23-30/2017 (Vol. III), at 611-12.

not instruct the jury on voluntary manslaughter. *See* N.T., 10/23-30/2017 (Vol. III), at 657-67. Thus, Appellant has failed to preserve this issue for appeal.[8] *See Moury*, 992 A.2d at 178 (citations omitted) ("A specific and timely objection must be made to preserve a challenge to a particular jury instruction. Failure to do so results in waiver. Generally, a defendant waives subsequent challenges to the propriety of the jury charge on appeal if he responds in the negative when the court asks whether additions or corrections to a jury charge are necessary."). Accordingly, this claim is waived.

## Victim Character Evidence

We next review Appellant's claim that the trial court erred in denying Appellant's request to admit character evidence about Victim pursuant to Pa.R.E. 404(a)(2)(B). We begin with our well-settled standard of review.

> Questions concerning the admissibility of evidence lie within the sound discretion of the trial court, and a reviewing court will not reverse the court's decision on such a question absent a clear abuse of discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.
>
> Our rules of evidence provide, generally, that "evidence of a person's character or character trait is not admissible to prove

---

[8] On appeal, the Commonwealth argued that Appellant waived this issue by failing to request a voluntary manslaughter instruction or object to its absence. *See* Commonwealth's Brief at 22-25. Although Appellant filed a reply brief, he did not refute the Commonwealth's waiver argument as to this claim.

that on a particular occasion the person acted in accordance with the character or trait." Pa.R.E. 404(a)(1).

One relevant exception to this rule, however, provides that a criminal defendant may offer evidence of an alleged victim's pertinent character trait, Pa.R.E. 404(a)(2)(B), and may prove this trait by specific instances of conduct. Specifically, the comment to Pa.R.E. 405 instructs:

> With regard to criminal cases, under Pa.R.E. 404(a)(2)(B), the accused may offer evidence of a pertinent trait of character of the alleged crime victim. Under Pa.R.E. 405(b)(2), the trait may be proven by specific instances of conduct without regard to whether the trait is an essential element of the charge, or defense. This is consistent with prior Pennsylvania law. ***See Commonwealth v. Dillon***, [] 598 A.2d 963 ([Pa.] 1991).

Comment to Pa.R.E. 405.

***Commonwealth v. Crosley***, 180 A.3d 761, 768-69 (Pa. Super. 2018)

(footnote and some citations and quotation marks omitted).

Our Supreme Court has described when this type of evidence is admissible, as follows.

> [W]hen self-defense is properly at issue, evidence of the victim's prior convictions involving aggression may be admitted, if probative, either (1) to corroborate the defendant's alleged knowledge of the victim's violent character, to prove that the defendant was in reasonable fear of danger, or (2) as character/ propensity evidence, as indirect evidence that the victim was in fact the aggressor. Only those past crimes of the victim that are similar in nature and not too distant in time will be deemed probative, with the determination as to similar nature and remoteness resting within the sound discretion of the trial judge.

***Mouzon***, 53 A.3d at 741 (citations omitted). This Court has defined a "pertinent" character trait as one "that is relevant to the crime or defense at

- 20 -

issue in the case." ***Commonwealth v. Minich***, 4 A.3d 1063, 1072 (Pa. Super. 2010).

By way of background, prior to jury selection on October 23, 2017, Appellant orally moved to admit evidence at trial that Victim had been under investigation for graffiti activity as a member of a crew called FTC. As part of the investigation, some FTC members were observed committing assault and holding assault weapons. N.T., 10/23-30/2017 (Vol. I), at 4-5. Appellant argued this evidence, in conjunction with the text messages Victim sent to his girlfriend, supported Victim's "whole overall intent, it goes to his motive, it goes to his habit in being part of this FTC gang of how he deals with any type of adverse, as he interprets, action." ***Id.*** at 6. Appellant did not state whether he sought to introduce the evidence pursuant to Pa.R.E. 404(a)(2)(B)(1), Pa.R.E. 404(a)(2)(B)(2), or both provisions.

Apparently assuming Appellant sought to introduce the evidence pursuant only to Pa.R.E. 404(a)(2)(B)(1), the trial court asked how Appellant knew this information. Appellant's counsel responded that Appellant did not know it at the time he shot Victim. N.T., 10/23-30/2017 (Vol. I), at 7. The trial court denied Appellant's request because Appellant had "to establish that he had knowledge of the dangerous propensity in order to have self-defense as a viable option for that factual scenario. All of that is irrelevant." ***Id.*** ***See also*** Trial Court Opinion, 7/3/2019, at 13-14 (explaining its decision to preclude Appellant from offering this evidence

- 21 -

because Appellant had no knowledge of Victim's character traits at the time of the shooting, and therefore any evidence as to Victim's character was irrelevant to the crimes or defenses at issue). Appellant did not argue in response that it was admissible under Pa.R.E. 404(a)(2)(B)(2).

On appeal, Appellant argues that the trial court erred when it precluded the evidence based on Rule 404(a)(2)(B)(1), because it was admissible pursuant to Rule 404(a)(2)(B)(2). Appellant's Brief at 50-53, 55. According to Appellant, Victim's "character was an essential part of the defense" to corroborate Appellant's testimony that Victim was the aggressor. *Id.* at 54. Appellant claims that "the police officers could have testified regarding [Victim's] character as it related to his gang involvement[,] particularly concerning physical assaults and acts of aggression, as well as providing specific instances of conduct." *Id.* at 55.

Arguably, Appellant waived this issue for failing to present clearly that legal theory to the trial court when Appellant moved to admit the evidence. *See Commonwealth v. Rush*, 959 A.2d 945, 949 (Pa. Super. 2008). Even assuming Appellant had preserved this claim, Appellant failed to present to the trial court, and fails to explain on appeal, how evidence that Victim was under investigation for graffiti tagging corroborates that Victim was the aggressor in this case. Appellant did not offer any specific instances of conduct that he sought to introduce to corroborate that Victim was the aggressor. It is beyond peradventure that evidence of unnamed persons'

assaultive behavior is not attributable as a character trait of Victim merely by virtue of Victim and the assaultive individuals belonging to the same group. Because Appellant did not offer any pertinent character evidence to corroborate that Victim was the aggressor, we conclude that the trial court did not abuse its discretion in precluding Appellant from introducing the proffered evidence. *See Commonwealth v. O'Drain*, 829 A.2d 316, 322 n.7 (Pa. Super. 2003) ("[T]his [C]ourt may affirm the decision of the trial court if there is any basis on the record to support the trial court's action; this is so even if we rely on a different basis in our decision to affirm.").

## Discretionary Aspects of Sentencing

Finally, we review Appellant's claim challenging the discretionary aspects of his sentence. We consider this issue mindful of the following.

> Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In this context, an abuse of discretion is not shown merely by an error in judgment. Rather, the appellant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.
>
> * * *
>
> When imposing [a] sentence, a court is required to consider the particular circumstances of the offense and the character of the defendant. In considering these factors, the court should refer to the defendant's prior criminal record, age, personal characteristics and potential for rehabilitation.

*Commonwealth v. Antidormi*, 84 A.3d 736, 760-61 (Pa. Super. 2014) (internal citations and quotation marks omitted).

An appellant is not entitled to the review of challenges to the discretionary aspects of a sentence as of right. Rather, an appellant challenging the discretionary aspects of his sentence must invoke this Court's jurisdiction. We determine whether the appellant has invoked our jurisdiction by considering the following four factors:

(1) whether appellant has filed a timely notice of appeal, *see* Pa.R.A.P. 902 and 903; (2) whether the issue was properly preserved at sentencing or in a motion to reconsider and modify sentence, *see* Pa.R.Crim.P. 720; (3) whether appellant's brief has a fatal defect, Pa.R.A.P. 2119(f); and (4) whether there is a substantial question that the sentence appealed from is not appropriate under the Sentencing Code, 42 Pa.C.S.[] § 9781(b).

*Commonwealth v. Samuel*, 102 A.3d 1001, 1006-07 (Pa. Super. 2014) (some citations omitted).

On appeal, Appellant claims that the sentence imposed was unreasonable and excessive, and that the trial court abused its discretion by failing to consider Appellant's rehabilitative needs, history, character, and expression of remorse; by focusing on the seriousness of the crime; and by relying on an incorrect statement of fact. Appellant's Brief at 21-32. Appellant avers that he preserved this claim "by timely filing a post-sentence motion with the trial court specifically requesting sentence modification to include consideration of his peaceful history, his circumstances[,] and rehabilitative needs." *Id.* at 19.

To satisfy the second requirement regarding preservation, "[o]bjections to the discretionary aspects of a sentence are generally waived if they are not raised at the sentencing hearing or in a motion to modify the

- 24 -

sentence imposed." ***Commonwealth v. Griffin***, 65 A.3d 932, 935 (Pa. Super. 2013).

> [F]or any claim that was required to be preserved, this Court cannot review a legal theory in support of that claim unless that particular legal theory was presented to the trial court. Thus, even if an appellant did seek [] to attack the discretionary aspects of sentencing in the trial court, the appellant cannot support those claims in this Court by advancing legal arguments different than the ones that were made when the claims were preserved.

***Rush***, 959 A.2d at 949 (citations omitted).

In the instant case, Appellant failed to raise his specific appellate claim in his post-sentence motion: that the sentence imposed was excessive, unreasonable, or otherwise an abuse of discretion. Rather, in his post-sentence motion, Appellant sought to offer additional evidence, which the trial court permitted, and requested a modification from a standard-range sentence to a mitigated-range sentence so that he could spend time with his children and pay any damages owed from the wrongful death and survival action filed by Victim's family.

Based on the foregoing, Appellant has failed to preserve his discretionary-aspects-of-sentencing claim because he did not present these arguments to the trial court in his post-sentence motion or at sentencing. ***See Commonwealth v. Lamonda***, 52 A.3d 365, 371 (Pa. Super. 2012) ("Issues challenging the discretionary aspects of a sentence must be raised in a post-sentence motion or by presenting the claim to the trial court during the sentencing proceedings. Absent such efforts, an objection to a

- 25 -

discretionary aspect of a sentence is waived.") (citations and quotation marks omitted).

Based on the foregoing, we affirm Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:  6/9/2020