J-S40024-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| CHRISTOPHER MYERS | : | |
| | : | |
| Appellant | : | No. 2801 EDA 2019 |

Appeal from the Judgment of Sentence Entered January 3, 2018
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0009678-2016

BEFORE:   SHOGAN, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.:                    **FILED DECEMBER 10, 2020**

Appellant, Christopher Myers, appeals *nunc pro tunc* from the judgment of sentence entered in the Philadelphia County Court of Common Pleas, following his jury trial convictions for robbery, theft, and simple assault.[1]  We affirm Appellant's convictions but vacate and remand for resentencing.

The relevant facts and procedural history of this case are as follows.

> On September 25, 2016, near 15th Street and Belfield Avenue, at approximately 3:30 PM…Complainant…was on his way home from Rite Aid when [Appellant] came up to him and demanded money from him.  …Complainant refused to hand over his money and [Appellant] hit…Complainant on the left side of his face with his fist and knocked him to the ground.  After…Complainant was on the ground, [Appellant] went in Complainant's pocket and took his cellphone and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3701(a)(1)(ii), 3921(a), and 2701(a), respectively.

around $90 in United States currency. [Appellant] then proceeded to kick Complainant on the left side of the face.

After [Appellant] kicked Complainant on the left side of his face, …Complainant became unconscious. Upon regaining consciousness, …Complainant was pulled up by his friend…and escorted home. As soon as he arrived home, an ambulance was called and Complainant was transported to Einstein Hospital at around 4:00 PM.

…Complainant testified that he received an MRI while at Einstein Hospital and was kept for observation. …Complainant also testified…he couldn't see out of his left eye, his nose was fractured up to his left eye, the lower portion of his face was fractured, and the top row of his teeth needed to be shaved and some of his teeth were dead. Due to Complainant's lack of insurance, he left Einstein around 4:00 AM on September 26, 2016 and received further treatment from the Veteran's hospital. At the Veteran's hospital, Complainant received an additional MRI and was referred to an eye doctor and dentist for his injuries.

(Trial Court Opinion, filed October 29, 2019, at 1-2).

On September 27, 2016, police interviewed Appellant in connection with the incident. During the interview, Appellant told detectives that Complainant owed him $200.00. Appellant explained that he saw Complainant walking on 15th Street and pulled over to ask Complainant for the money he owed. Appellant stated that Complainant refused to pay, and a fight ensued, during which Appellant punched Complainant and knocked him down. Appellant said he then took Complainant's wallet, saw that Complainant only had $4.00, and threw the money and wallet back at him.

Significantly, the day after the interview, September 28, 2016, Appellant was transported to the hospital due to a seizure. On March 1, 2017,

Appellant filed an omnibus pre-trial motion seeking to suppress any statements he made to the police during the interview. At a September 18, 2017 hearing on the suppression motion, Appellant claimed he told detectives during the interview that he was lightheaded and had spots in his vision, and that he has a history of seizures. He asserted that the detectives told him he could receive medical care only after he completed the interview, and thus coerced him into waiving his *Miranda*[2] rights. Ultimately, the court denied the suppression motion.

From September 19, 2017, to September 21, 2017, the court conducted a jury trial, at the conclusion of which the jury convicted Appellant of robbery, theft, and simple assault. The court sentenced Appellant on January 3, 2018, to five (5) to ten (10) years' incarceration for the robbery offense, followed by concurrent terms of three (3) years' probation for theft and two (2) years' probation for simple assault.

Appellant filed a timely post-sentence motion for reconsideration of sentence on January 13, 2018, which the court denied on March 14, 2018. On June 26, 2018, Appellant timely filed a first petition pursuant to the Post Conviction Relief Act ("PCRA"),[3] seeking reinstatement of his direct appeal rights *nunc pro tunc*. The PCRA court granted the petition on September 18,

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[3] 42 Pa.C.S.A. §§ 9541-9546

2019, and on September 26, 2019, Appellant filed a timely notice of appeal *nunc pro tunc*. On September 27, 2019, the court ordered Appellant to file a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P. 1925(b); Appellant timely complied on October 16, 2019.

Appellant raises two issues for our review:

Whether the [trial court] was in error in not granting relief for denying Appellant's Motion to Suppress[?]

Whether the [trial court] erred in not granting relief on the grounds that there was insufficient evidence to support the jury's verdict[?]

(Appellant's Brief at 6).

In his first issue, Appellant argues his September 27, 2016 statement to police was not knowing, intelligent, and voluntary. Appellant maintains he informed the detectives during the interview that he was lightheaded and had black spots in his vision. Appellant asserts that he also told the detectives of his history of seizures and that he had not been taking his prescribed medication. Appellant alleges that, rather than pausing the interview to provide medical assistance, the detectives promised he would receive medical treatment only after finishing with the interview. As a result, Appellant contends he was psychologically coerced into waiving his **Miranda** rights and providing the statement, believing that the more he cooperated, the sooner he would receive medical treatment. Appellant concludes this Court should reverse the trial court's order denying his motion to suppress, vacate the judgment of sentence, and order a new trial. We disagree.

- 4 -

We review the denial of a suppression motion as follows:

> Our standard of review in addressing a challenge to a trial court's denial of a suppression motion is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct.
>
>> [W]e may consider only the evidence of the prosecution and so much of the evidence for the defense as remains uncontradicted when read in the context of the record as a whole. Where the record supports the findings of the suppression court, we are bound by those facts and may reverse only if the court erred in reaching its legal conclusions based upon the facts.

**Commonwealth v. Williams**, 941 A.2d 14, 26-27 (Pa.Super. 2008) (*en banc*) (internal citations and quotation marks omitted). "It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony." **Commonwealth v. Clemens**, 66 A.3d 373, 378 (Pa.Super. 2013) (quoting **Commonwealth v. Gallagher**, 896 A.2d 583, 585 (Pa.Super. 2006)).

Furthermore,

> When determining the validity of a **Miranda** waiver, we employ a two-step inquiry. We first ask whether the waiver was voluntary in the sense of being the result of an intentional choice on the part of a defendant who was not subject to undue government pressure. If we conclude the waiver was voluntary, we then ask if the defendant was aware of the nature of the choice that he made by giving up his **Miranda** rights, *i.e.*, whether it was knowing and intelligent.

**Commonwealth v. Knox**, 219 A.3d 186, 193-94 (Pa.Super. 2019), *appeal denied*, ___ Pa. ___, 228 A.3d 256 (2020) (internal citations omitted).

Instantly, regarding Appellant's suppression motion, the trial court reasoned:

> During the suppression hearing, Detective Kenneth Flemming testified that on September 27, 2016, at the Northwest Detective Division, he brought [Appellant] up from the first floor to his office on the second floor for questioning. At around 11:20 PM, Detective Flemming and Detective Cannon began questioning [Appellant], providing him with his rights and asking if he was under the influence of any drugs, alcohol, medications, or narcotics. [Appellant] did not make any requests throughout the duration of the interview, he made no requests for food or water, or any request for medical attention. If [Appellant] had stopped and made any request during the interview, Detective Flemming testified that he would have noted it in [Appellant]'s statement. Detective Flemming did not recall anything indicating that [Appellant] had not been in the right condition to give a statement, instead noting that [Appellant] was "perfectly normal" during the questioning. The questioning lasted from 11:20 PM through 11:46 PM, a mere 26 minutes. At the conclusion of the interview, [Appellant] did not ask for any medical assistance or inform the detectives of any medical issues.
>
> In contrast, [Appellant] testified at the suppression hearing that uniformed police officers came to retrieve him from his holding cell and asked if he was ready to speak to the detectives, to which he responded, "Yes." [Appellant] claimed he was feeling lightheaded and seeing black spots during his questioning. [Appellant] claimed that he informed both detectives of his physical state and they told him to continue his statement and he would get treatment afterwards. [Appellant] further testified that he has suffered from seizures since he was 9 years old and that he had not been taking his seizure medication for about a month prior to this interrogation due to an issue with his medical insurance. [Appellant] explained that when he feels a seizure coming on, he feels lightheaded, sees black spots, and that lights begin to flash. During the interview with detectives, [Appellant] never stated that he was having a seizure nor did he lose consciousness during their conversation. [Appellant] acknowledged that he signed

- 6 -

each page of his written statement. However, at the suppression hearing, he claimed that he only signed his statement so he could receive medical treatment.

The following morning, on September 28, 2016, [Appellant] suffered a seizure and an ambulance was requested around 10:40 AM. The Philadelphia Fire Department EMS ambulance record indicated that [Appellant]'s status was normal and his neurological status was also normal. [Appellant] arrived at the Albert Einstein Medical Center at 11:02 AM. The medical records indicated that [Appellant]'s level of consciousness was alert, his orientation was oriented times three, affect or behavior is alert, appropriate, calm, and cooperative, no evidence barriers to learning were present, and that [Appellant] denied fever, chills, nausea, vomiting, focal weakness, chest pain, shortness of breath, altered sensation, and abdominal pain. The medical report further noted that [Appellant] was alert and awake and was able to provide a history.

During the suppression hearing, the trial court found [Appellant]'s testimony incredible and the testimony of Detective Flemming credible. The trial court specifically found incredible that portion of [Appellant]'s testimony that he had no memory of what happened after he was questioned and returned to his cell. The court found this incredible especially since [Appellant] testified in detail as to his memory of his conversation with the detectives. The trial court stated that it was incomprehensible how [Appellant] could retain those details as to the statement he provided right before he was returned to his cell, but was unable to retain any memory after that until he awoke in the hospital. The trial court also found it incredible that [Appellant] would experience symptoms of an onset of a seizure and that the seizure would not occur until 12 hours later.

The trial court determined that [Appellant]'s waiver was voluntary, knowing, and intelligent based on [Appellant]'s …statement which failed to suggest that [Appellant] was not of clear mind and unable to understand the questions. The trial court also noted that [Appellant]'s testimony at the suppression hearing was that when he was taken to speak with the detectives, he was asked if he was ready to speak

- 7 -

with them, to which he responded, "Yes," further proving that [Appellant]'s waiver was voluntary, knowing, and intelligent.

(Trial Court Opinion at 7-9) (internal footnote omitted). We will not disrupt the court's credibility determination in favor of Detective Flemming and against Appellant. *See Clemens, supra*. The testimony presented at the suppression hearing shows Appellant's waiver of his *Miranda* rights was knowing, intelligent, and voluntary. *See Knox, supra*. Thus, the court did not err in denying Appellant's suppression motion. *See Williams, supra*.

In his second issue, Appellant argues the evidence was insufficient to support his convictions. Regarding the robbery and theft convictions, Appellant contends the Commonwealth failed to show that any evidence was found on Appellant's person, despite Complainant's testimony that Appellant had taken his cellphone and $90.00. Concerning the simple assault conviction, Appellant maintains Complainant's testimony concerning the severity of the injury to his eye contradicted medical reports. Appellant also claims the Commonwealth failed to provide any evidence to support its contention that Appellant initiated the altercation. Rather, Appellant insists it was a "mutual fight." Appellant concludes the evidence was insufficient to support his convictions, and this Court should grant relief.[4] We disagree.

_____

[4] Throughout his argument, Appellant also challenges Complainant's credibility, which implicates the weight of the evidence rather than the sufficiency of the evidence. *See Commonwealth v. Price*, 616 A.2d 681,

When examining a challenge to the sufficiency of evidence, our standard of review is as follows:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [the above] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence.  Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered.  Finally, the [trier] of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Hansley*, 24 A.3d 410, 416 (Pa.Super. 2011), *appeal denied*, 613 Pa. 642, 32 A.3d 1275 (2011) (quoting *Commonwealth v. Jones*, 874 A.2d 108, 120-21 (Pa.Super. 2005)).

The Crimes Code defines the offenses of robbery, theft, and simple

---

683 (Pa.Super. 1992) (explaining sufficiency challenge asks whether evidence exists on record to support conviction, whereas argument that witness's account is not credible goes to weight).  Appellant, however, did not raise a weight of the evidence claim in his post-sentence motion or at sentencing.  Therefore, to the extent Appellant's argument raises a weight of the evidence claim, it is waived.  *See* Pa.R.Crim.P. 607(A)(1)-(3) (stating challenge to weight of evidence must be raised with trial court in oral or written motion before sentencing or in post-sentence motion).

assault, in pertinent part, as follows:

### § 3701. Robbery

**(a) Offense defined.—**

(1) A person is guilty of robbery if, in the course of committing a theft, he:

\* \* \*

(ii) threatens another with or intentionally puts him in fear of immediate serious bodily injury[.]

18 Pa.C.S.A. § 3701(a)(1)(ii).

### § 3921. Theft by unlawful taking or disposition

**(a) Movable property.—**A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a).

### § 2701. Simple Assault

**(a) Offense defined.—**Except as provided under section 2702 (relating to aggravated assault), a person is guilty of assault if he:

(1) attempts to cause or intentionally, knowingly or recklessly causes bodily injury to another;

(2) negligently causes bodily injury to another with a deadly weapon;

(3) attempts by physical menace to put another in fear of imminent serious bodily injury[.]

18 Pa.C.S.A § 2701(a)(1)-(3).

Instantly, the court addressed Appellant's challenge to the sufficiency of

the evidence as it relates to his robbery and theft convictions as follows:

> …[Appellant] demanded money from…Complainant and…Complainant refused. Complainant testified [Appellant] then proceeded to hit him on the left side of his face with his fist, knocking Complainant to the ground, took Complainant's money and cell phone, and then kicked him in the face, causing him to lose consciousness. These facts are more than sufficient evidence to support the robbery and theft convictions beyond a reasonable doubt. [Appellant] unlawfully took Complainant's money and cellphone by intentionally putting Complainant in fear of immediate serious bodily injury. Further, the taking was done with the intent to permanently deprive Complainant of his property. It is entirely believable that [Appellant]'s violent actions would reasonably place…Complainant in fear of immediate serious bodily injury, as the head is a fragile and crucial part of the body. The testimony that Complainant provided that [Appellant] kicked him, while he was on the ground, in this fragile and crucial part of the body certainly supports a threat of serious bodily injury during the course of the theft.

(Trial Court Opinion at 10-11). Concerning the simple assault conviction, the court reasoned:

> …[T]he jury clearly found…Complainant's testimony as to his injuries to be credible. …Complainant testified that he couldn't see out of his left eye, the lower left side of his face was fractured, and his nose was fractured up to his left eye, and the top row of his teeth needed to be shaved and some of his teeth were dead. Complainant further testified that he needed a root canal and continues to receive treatment for the injuries he sustained from [Appellant]'s beating. Although circumstantial, [Complainant]'s injuries were consistent with what would be expected of a punch and kick to the face. Based on the injuries Complainant sustained, it is evident that [Appellant] intentionally caused bodily injury to…Complainant. Therefore, the evidence was sufficient to support [Appellant]'s simple assault conviction as a misdemeanor in the second degree.

(Trial Court Opinion at 11-12) (internal citation omitted).[5]  Viewed in the light most favorable to the Commonwealth as verdict-winner, we agree with the court's analysis that the evidence was sufficient to convict Appellant of robbery, theft, and simple assault.  **See** 18 Pa.C.S.A. §§ 3701(a)(1)(ii); 3921(a); 2701(a); **Hansley, supra**.  Therefore, we affirm Appellant's convictions.

Nevertheless, we observe that Appellant previously argued in his post-sentence motion and Rule 1925(b) statement, and the trial court and Commonwealth agree, that Appellant's conviction for theft should have merged with robbery for sentencing purposes.  This Court has explained:

> Whether crimes merge for sentencing purposes implicates the legality of the sentence, which this Court can raise *sua sponte*.  Therefore, our standard of review is *de novo* and our scope of review is plenary.  Merger of sentences is governed generally by Section 9765 of the Sentencing Code, which provides:
>
> ### § 9765.  Merger of sentences

---

[5] In the argument section of his brief, Appellant asserts some claims that the trial court opinion did not address, including: (1) the investigating officer testified that police did not recover Complainant's belongings from Appellant; (2) the Commonwealth produced no evidence showing the amount of cash Complainant had before the incident; (3) Complainant's medical records state that Complainant had no vision loss; and (4) the Commonwealth produced no evidence to show that Appellant initiated the altercation.  Appellant failed to specify these particular points in his Rule 1925(b) statement, so they are waived.  **See Hansley, supra** at 415 (explaining Rule 1925(b) statement must be specific enough for trial court to identify and address issues raised on appeal; concise statement "which is too vague to allow the court to identify the issues raised on appeal is the functional equivalent of no concise statement at all"; thus, if concise statement is too vague, court may find waiver).

> No crimes shall merge for sentencing purposes unless the crimes arise from a single criminal act and all of the statutory elements of one offense are included in the statutory elements of the other offense. Where crimes merge for sentencing purposes, the court may sentence the defendant only on the higher graded offense.
>
> 42 Pa.C.S.A. § 9765. [T]he language of the legislature is clear. The only way two crimes merge for sentencing is if **all** elements of the lesser offense are included within the greater offense. …
>
> \* \* \*
>
> To determine whether offenses are greater and lesser-included offenses, we compare the elements of the offenses. If the elements of the lesser offense are all included within the elements of the greater offense and the greater offense has at least one additional element, which is different, then the sentences merge. If both crimes require proof of at least one element that the other does not, then the sentences do not merge.

*Commonwealth v. Watson*, 228 A.3d 928, 941 (Pa.Super. 2020) (internal citations and quotation marks omitted).

This Court has historically found that theft and robbery merge for sentencing purposes. *Commonwealth v. Turner*, 402 A.2d 542, 544 (Pa.Super. 1979) (explaining that by definition, robbery is committed "in the course of committing a theft"; therefore, robbery necessarily involves theft, and offenses merge for sentencing purposes). Although we have not located a definitive, published decision that addresses the propriety of merging theft and robbery convictions since the adoption of Section 9765 (effective February 7, 2003), recent unpublished decisions from this Court have continued to hold

that robbery and theft convictions merge for sentencing purposes. *See, e.g., Commonwealth v. Rouse*, 237 A.3d 493 (Pa.Super. 2020) (unpublished memorandum) (holding appellant's robbery with threat of serious bodily injury conviction merged with his theft by unlawful taking conviction for sentencing purposes; vacating and remanding for resentencing).[6]

Instantly, Appellant's robbery and theft offenses arose from a single act—Appellant punching Complainant and taking his cellphone and money. During sentencing, however, the court imposed separate sentences for these crimes. As both convictions arose from the same criminal act, and the elements of theft are subsumed in the robbery offense as charged, theft constitutes a lesser-included offense of robbery. *See Watson, supra*. Consequently, Appellant's robbery and theft convictions should have merged for sentencing purposes. *Id.*; 42 Pa.C.S.A. § 9765. Accordingly, we affirm Appellant's convictions but vacate the judgment of sentence and remand for resentencing. *See Commonwealth v. Thur*, 906 A.2d 552 (Pa.Super. 2006), *appeal denied*, 596 Pa. 745, 946 A.2d 687 (2008) (stating: "If our disposition upsets the overall sentencing scheme of the trial court, we must remand so that the court can restructure its sentence plan").

Convictions affirmed. Judgment of sentence vacated. Case remanded for resentencing. Jurisdiction relinquished.

---

[6] *See* Pa.R.A.P. 126(b) (unpublished non-precedential memoranda decisions of Superior Court filed after May 1, 2019, may be cited for persuasive value).

*Judgment Entered.*

*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 12/10/2020*