J-S40025-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ERIC JOHNSON | : | |
| | : | |
| Appellant | : | No. 2613 EDA 2022 |

Appeal from the Judgment of Sentence Entered July 6, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No(s):  CP-51-CR-0002426-2020

BEFORE:   NICHOLS, J., SULLIVAN, J., and COLINS, J.[*]

MEMORANDUM BY SULLIVAN, J.:                **FILED APRIL 19, 2024**

Eric Johnson ("Johnson") appeals from the judgment of sentence imposed after a jury convicted him of third-degree murder, three violations of the Uniform Firearms Act, and possessing an instrument of crime.[1]  We affirm.

The trial court summarized the factual background of this appeal as follows:

> [In November 2019, Johnson] entered a bar located on the corner of Emerald and East Tioga streets in Philadelphia.  Sometime after [Johnson] entered the bar, the decedent, Harry Speech [("Speech")], entered.  Within minutes of . . . Speech entering the bar, [Johnson] and Mr. Speech began arguing.  [Johnson] and . . . Speech continued to argue as they exited the bar.  . . . [A]cross the intersection from the bar, [Johnson] pulled out a handgun and shot . . . Speech in the face, abdomen, thigh, and buttocks.  . . . Speech's friend, Michael Hart (["Hart]"]), helped him into an SUV and attempted to get . . . Speech to the hospital.  Police stopped . . . Hart's car and realized that . . . Speech had been shot.  . . .

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] **See** 18 Pa.C.S.A. §§ 2502(c), 6105(a)(1), 6106(a)(1), 6108, 907(a).

Speech was placed into a police car and taken to Temple University Hospital, where he was pronounced dead on November 21, 2019. The medical examiner determined that . . . Speech's death was caused by gunshot wounds to his head and abdomen. [A police log about the stop of Hart's car indicated that Hart initially described the suspect who shot Speech as a Hispanic male.[2] Hart later described the suspect to detectives as a Black male.]

Police collected video surveillance from several different locations and prepared a compilation video, which showed the shooting in its entirety [("the compilation video"). The compilation video showed the shooting suspect run off with two other people.]

Trial Court Opinion, 1/3/23, at 2 (citations to the record omitted).

Officer Tyler Smith ("Officer Smith") worked in the district covering the neighborhood around the bar, and he had known Johnson for about three years from seeing him in the area on an almost daily basis. *See* N.T., 4/6/22, at 115, 120-21. Officer Smith viewed the compilation video and identified the shooting suspect as Johnson. *See id*. at 114-15, 117. Officer Smith contacted the detectives investigating the shooting, gave them a statement, and identified Johnson again from still photographs taken from surveillance cameras. *See* N.T., 4/7/22, at 81.

Detectives also interviewed Johnson's paramour, Karley Weisenbach ("Weisenbach"). *See id*.at 50, 82. Weisenbach stated that the day before the shooting, she had given birth to her and Johnson's child and, on the night

_____

[2] Johnson is a Black male. Hart did not testify at trial because the Commonwealth was not able to locate him. *See* N.T., 4/6/22, at 104. Upon the defense's request, the Commonwealth stipulated to the reading of the police log into the record. *See id*. at 106-08, 112.

of the shooting, she was still in Holy Redeemer Hospital ("the hospital"). *See id*. at 45-46. She told detectives that she had texted Johnson about the birth of their daughter, and he called her, but she did not see him until after her discharge a few days after giving birth. *See id*. at 46-47. Weisenbach identified Johnson from still photographs and gave detectives Johnson's phone number. *See id*. at 50-51, 52-53, 82. Detectives obtained a warrant for phone records based on Johnson's phone number, and they obtained cell site location information that placed Johnson's SIM card around the scene of the shooting of Speech.[3] *See id*. at 82-83, 118. Police arrested Johnson in February 2020. *See id*. at 85. While Johnson was in custody pending trial, a fellow inmate, Thomas Graham ("Graham"), who was familiar with both Johnson and Speech, spoke with Johnson while on a prison bus; Graham later told his stepfather, a former police detective, that Johnson admitted to shooting and killing Speech, and Graham's stepfather contacted police. *See* N.T., 4/6/22, at 128-33, 150.

Shortly before trial, defense counsel advised the Commonwealth of Johnson's intent to raise an alibi defense that he was with Weisenbach at the

---

[3] There were different phones at issue in this case, a red phone seen on the compilation video, and a pink and white phone later seized from Johnson at the time of his arrest. The cell site location information was based on the SIM card associated with Johnson's phone number, and the Commonwealth presented circumstantial evidence that the SIM card had been in the red phone on the night of the shooting. *See* N.T., 4/7/22, at 86-88, 123-25, 133-44.

time of the shooting. *See* N.T., 4/5/22, at 5-6.[4] The Commonwealth undertook a further investigation into the possible alibi defense and obtained additional evidence against Johnson. This included a recording of a March 2022 prison phone call from Johnson to Weisenbach, during which Johnson and Weisenbach argued about her contacting his attorney to say that he was with her at the hospital. *See id*. at 10-14. Weisenbach also gave another statement to detectives two days before trial, and she indicated that Johnson was trying to have her corroborate his alibi, but she refused to lie. *See id*. at 13; *see also* N.T., 4/7/22, at 48, 58.

At trial, the Commonwealth played the compilation video that showed the shooting of Speech, and the events before and after the shooting. *See* N.T., 4/7/22, at 129-62. Detective Thorsten Lucke ("Detective Lucke"), who had prepared the compilation video and analyzed the data from Johnson's phone number, corroborated information obtained from Johnson's phone number to portions of the compilation video. *See id*. at 138-41 (indicating that the phone records of a sixty-three second phone call matched the video of the suspect receiving a phone call and then hanging up after sixty-three seconds). Detective Lucke further indicated that the cell site location

_____

[4] Johnson, through defense counsel, had also requested that the Commonwealth search his phone for pictures of him with Weisenbach at the hospital. *See* N.T., 4/5/22, at 8-9. The Commonwealth was not able to access the phone taken from Johnson at the time of his arrest. *See id*. at 9; *see also* N.T., 4/8/22, at 92-93.

information never located Johnson's phone number near the hospital where Weisenbach gave birth. *See id*. at 119.

The Commonwealth presented testimony from Officer Smith concerning his identification of Johnson after viewing the compilation video. *See* N.T., 4/6/22, at 115. During cross-examination, defense counsel noted that the portion of the compilation video showing the shooting of Speech were in black and white and less clear than the other portions of the compilation video. *See id*. at 122-23.

Weisenbach testified that Johnson never visited her at the hospital where she gave birth. *See* N.T., 4/7/22, at 45. Over defense counsel's objection, the Commonwealth played the prison phone call between Johnson and Weisenbach, and Weisenbach testified that she refused to lie for Johnson and say that he was with her at the hospital. *See id*. at 53-55. During cross-examination, defense counsel elicited Weisenbach's testimony that she was angry at him for seeing other women and disrespecting her pregnancy. *See id*. at 59-61. Defense counsel also elicited her testimony that a child welfare agency had removed her child from her care, and she would not want Johnson to have custody of their child if he were released from prison. *See id*. at 75.

Johnson's fellow inmate, Graham, also testified that Johnson told him that Speech and Johnson "had some words" earlier on the day of the shooting, and Johnson later saw Speech at the bar. N.T., 4/6/22, at 134. Johnson then told Graham that he "hit that N too many times[,] and he died," which Graham took to mean that Johnson killed Speech. *Id*. at 132, 134. Defense counsel

impeached Graham with Graham's open cases for burglary and arson, for which he was awaiting sentencing; his lengthy criminal record, which included *crimen falsi*; and his substance abuse issues. ***See id***. at 136-43, 149.

Johnson testified at trial and asserted that on the night of the shooting he was at the hospital with Weisenbach and their child. ***See*** N.T., 4/8/22, at 11. Johnson testified that he and Weisenbach had a difficult relationship and they argued over whether he would sign the child's birth certificate, whether he would take a paternity test, and his wish for the child to take his last name. ***See id***. at 13. He stated he intended to take full custody of the child. ***See id***. He denied asking Weisenbach to lie for him during the prison phone call; rather, he asserted, he was urging her to tell the truth. ***See id***. at 56.

During closing arguments, defense counsel highlighted portions of the compilation video. ***See*** N.T., 4/8/22, at 127-32. Defense counsel argued that the person whom the Commonwealth alleged shot Speech had been predominantly using his left hand to carry and use his phone and, therefore, must have been left-handed. ***See id***. at 130-31 (arguing that because a phone is a valued possession, a person would hold their phone in their dominant hand). He then noted that the person who shot Speech used his right hand to hold the firearm and asserted that detective missed those details. ***See id***. at 132.

The jury found Johnson not guilty of first-degree murder, but guilty of the third-degree murder and the remaining offenses. On July 6, 2022, the trial court sentenced Johnson to an aggregate term of thirty-five to seventy

years of imprisonment.[5]  In support of its sentence, the court referenced the presentence investigation report and thoroughly discussed the facts of the case, Johnson's arguments at sentencing, and the aggravating factors upon which it imposed sentence.  *See* N.T., 7/6/22, at 41-50.  This included the trial court's discussion that it believed Johnson had perjured himself when insisting that he had been with Weisenbach at the time of the shooting and suborned perjury when attempting to have Weisenbach corroborate his alibi. *See* N.T., 7/6/22, at 45-48.  Johnson filed timely post-sentence motions, which the trial court denied.  Johnson timely appealed, and both he and the trial court complied with Pa.R.A.P. 1925.

Johnson raises the following issues on appeal, which we have reordered for disposition:

I. Whether the adjudication of guilt for murder in the third degree is based upon insufficient evidence where the Commonwealth failed to prove beyond a reasonable doubt that [Johnson] possessed the requisite mental state for third degree murder?

II. Whether [Johnson's] convictions are against the weight of the evidence and shocking to one's sense of justice for the following reasons:

_____

[5] The trial court imposed the following consecutive terms of imprisonment: third-degree murder—a standard range sentence of twenty to forty years; possession of firearm prohibited—an above the guidelines sentence of ten to twenty years; firearms not be carried without a license—an aggravated range sentence of three and one half to seven years; carrying firearms on public street in Philadelphia—a standard range sentence of one to two years; possessing an instrument of crime—a standard range sentence of six to twelve months.  *See* Sentencing Order, 7/6/22, unnumbered at 1; N.T., 7/6/22, at 49-50.  Johnson was thirty-two years old at the time of sentencing.

    a. Detectives did not interview . . . Hart to question him more closely about his description of the perpetrator as being a Hispanic male,

    b. Identifying witness [Officer Smith] was equivocal about his identification from a less clear black and white version of surveillance video,

    c. [Graham] was a drug addicted thief with multiple convictions for burglary, arson, etc. who had a strong motive and incentive to fabricate,

    d. [Weisenbach] possessed strong motives to fabricate associated with her resentment that the [Johnson] refused to sign the birth certificate for their child, demanded a paternity test and was contesting placement of the child in a contemporaneous dependency case, and

    e. The surveillance video depicts two different men, one who was left[-]handed and another who was right[-]handed?

III. Whether the court abused its discretion at sentencing creating a substantial question that the sentence is inappropriate because it is contrary to the norms underlying the Sentencing Code where:

    a. The court sentenced 32[-]year[-]old Johnson to an aggregate upward departure from the guidelines of 35-70 years of incarceration where that length of sentence would not make [Johnson] eligible for parole until he reached the age of 77 where such a sentence amounts to a life sentence for the crime of third[-]degree murder.

    b. The court failed to give the proper weight to mitigating factors consisting most notably of the absence of a significant psychiatric disorder that predicted future violent propensities, a relatively stable upbringing[,] and [Johnson's] concern for his children.

Johnson's Brief at 6-7 (some capitalization omitted).

In his first issue, Johnson challenges the sufficiency of the evidence underlying his conviction for third-degree murder.

Our standard of review for sufficiency claims is as follows:

The standard we apply in reviewing the sufficiency of evidence is whether, viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact[-]finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not weigh the evidence and substitute our judgment for that of the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by a fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

***Commonwealth v. Lowry***, 55 A.3d 743, 751 (Pa. Super. 2012) (internal citation omitted).

Third-degree murder occurs upon "the killing of an individual with malice." ***Commonwealth v. Jones***, 271 A.3d 452, 458 (Pa. Super. 2021) (internal citation omitted). This Court has stated that "malice" includes "not only particular ill will toward the victim, but also wickedness of disposition, hardness of heart, wantonness, and cruelty, recklessness of consequences, and conscious disregard by the defendant of an unjustified and extremely high risk that his actions may cause serious bodily harm." ***Id***. (internal citations omitted). A fact-finder may infer malice "from the use of a deadly weapon

upon a vital part of the victim's body." ***Commonwealth v. Knox***, 219 A.3d 186, 195 (Pa. Super. 2019) (internal citations and quotations omitted).

Johnson contends that the evidence demonstrates that he acted amid an argument that provoked an uncontrollable passion and rage during an argument with Speech over a woman. ***See id***. at 24, 26.[6] He argues that his mental state was a critical issue at trial, and the jury's finding that he acted with malice was unreasonable. ***See id***. at 26.

With respect to the sufficiency of the evidence for third-degree murder, the trial court ably explained that there was ample evidence that Johnson, having shot Speech in the face and abdomen, employed a deadly weapon on vital parts of his victim's body. ***See*** Trial Court Opinion, 1/3/23, at 13. We agree that this evidence was sufficient to prove Johnson acted with malice. ***See Knox***, 219 A.3d at 195.

We add that Johnson attempts to interject principles of voluntary manslaughter into his challenge to the sufficiency of the evidence for third-degree murder.[7] Where the defendant denies killing the victim, the principles of voluntary manslaughter do not apply. ***Cf. Commonwealth v. Sanchez***, 82 A.3d 943, 980 (Pa. 2013) (noting that when a defendant denies committing

---

[6] Johnson apparently refers to a portion of the prison phone call and Weisenbach's testimony that she told Johnson "something along the lines of you did this over a b[]." N.T., 4/7/22, at 55.

[7] "[V]oluntary manslaughter is a form of homicide that involves the specific intent to kill, but contains no legal malice as a result of passion and provocation." ***Commonwealth v. Buterbaugh***, 91 A.3d 1247, 1260-61 (Pa. Super. 2014) (*en banc*) (internal citation omitted).

the killing a jury charge on voluntary manslaughter is not required). Here, at trial, Johnson expressly denied shooting Speech and asserted that he was at the hospital with Weisenbach. *See* N.T., 4/8/22, at 10-11. There are no indications that Johnson sought a voluntary manslaughter instruction, or the jury considered the principles of voluntary manslaughter as a means of negating malice. Thus, his suggestion on appeal that he acted under an uncontrollable passion or rage that negated his ability to form malice relies on inapt legal principles, *see Sanchez*, 82 A.3d at 980, and theories that he neither raised nor developed at trial. *See Commonwealth v. Truong*, 36 A.3d 592, 598 (Pa. Super. 2012) (*en banc*) (concluding that Truong waived a theory of "imperfect self-defense" when he raised it for the first time on appeal).[8] Accordingly, we reject the argument that Johnson's mental state at the time of the shooting was a critical issue at trial, and we conclude his challenge to the sufficiency of the evidence merits no relief.

In his second issue, Johnson asserts that his convictions were against the weight of the evidence. The following principles govern our review:

> A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion

---

[8] Even if Johnson had admitted to shooting Speech, there was no evidence for a jury to have found that he had been acting under a sudden and intense passion resulting from serious provocation by the victim. The mere fact that he had a verbal argument with Speech would not establish such provocation. *See Truong*, 36 A.3d at 600 (noting that "[t]he test for [serious] provocation is whether a reasonable person confronted by the same series of events, would become impassioned to the extent that his mind would be incapable of cool reflection") (internal citation and quotations omitted).

of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice. It has often been stated that a new trial should be awarded when the jury's verdict is so contrary to the evidence as to shock one's sense of justice and the award of a new trial is imperative so that right may be given another opportunity to prevail.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court:

> Appellate review of a weight claim **is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence**. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

*Commonwealth v. Clay*, 64 A.3d 1049, 1054-55 (Pa. 2013) (internal citations and quotations omitted) (emphasis in original). An appellate court, therefore, reviews the trial court's decision on a weight of the evidence claim for abuse of discretion. *See Commonwealth v. Clemons*, 200 A.3d 441, 464 (Pa. 2019).

Johnson presents two claims concerning the weight of the evidence. First, like his sufficiency issue, he claims that there was credible testimony from Weisenbach that he and Speech had been arguing over a woman. *See*

Johnson's Brief at 24. He asserts that his actions were more akin to acting in the heat of passion than acting with reckless disregard to the value of Speech's life. *See id*. He concludes that the jury disregarded the history of the dispute between him and Speech and "obvious evidence that [he] act with intense rage[,]" such that the trial court should have ordered a new trial. *See id*.

Johnson's first claim is waived. As noted above, Johnson did not pursue voluntary manslaughter at trial, nor could he when he expressly denied shooting Speech. *See Truong*, 36 A.3d at 598; *see also Sanchez*, 82 A.3d at 980. Furthermore, Johnson's post-sentence motion and Rule 1925(b) statement, both of which were identical to his statement of questions involved on appeal, challenged the weight of the evidence based only on the evidence of the alleged misidentification that he killed Speech. *See* Post-Sentence Motion, 7/15/22, unnumbered at 2; Rule 1925(b) Statement, 10/30/22, unnumbered at 1; Johnson's Brief at 6. Johnson did not fairly suggest a claim that the jury's finding of malice was against the weight of the evidence, nor, under the circumstances of this case, would such a claim be readily discernible from the record. *Cf. Commonwealth v. Rogers*, 250 A.3d 1209, 1224 (Pa. 2021) (vacating this Court's decision that Rogers's Rule 1925(b) statement was too vague where the weight of the evidence claim was readily understandable from the context of the record). Indeed, the trial court did not address a challenge to the weight of the evidence concerning malice. *See* Trial Court Opinion, 1/3/23, at 4-12. Therefore, Johnson failed to preserve his claim that the finding of malice was against the weight of the evidence,

and we will not address it. ***See Commonwealth v. Jones***, 191 A.3d 830, 835 (Pa. Super. 2018) (concluding a post-sentence motion and Rule 1925(b) statement challenging the weight of identification testimony did not preserve a claim that the findings of premeditation and specific intent to kill were against the weight of the evidence); ***see also*** Pa.R.A.P. 2116(a); Pa.R.A.P. 1925(b)(4)(vii).

Johnson's second weight of the evidence claim challenges the finding he shot Speech. Johnson rehashes his trial theories that: (1) Hart initially identified the suspect as a Hispanic male, but detectives failed to interview Hart about that description; (2) Officer Smith identified Johnson from the poor quality black and white portion of the compilation video showing the shooting; (3) Graham, Johnson's fellow inmate, was unworthy of belief and had an improper motive to fabricate his testimony about Johnson's admission to killing Speech; (4) Weisenbach had improper motives to fabricate her testimony and refuse to corroborate his alibi; and (5) the compilation video showed that the person the Commonwealth alleged shot Speech had predominantly been using his left hand before the shooting, but the person who shot Speech held the gun in his right hand. ***See*** Johnson's Brief at 24-25.

The trial court rejected Johnson's claim and explained that the compilation video alone clearly established that Johnson shot Speech. ***See*** Trial Court Opinion, 1/3/23, at 4-5 (noting, *inter alia*, that at trial, Johnson "looked exactly like the stocky bearded man" in the portion of the compilation

- 14 -

video from the bar, and the portion of the compilation video showing the shooting, despite being less clear than the video from bar, also showed the stocky bearded man with the same clothes, height, build, hairline, and general appearance pulling a gun and shooting Speech) (footnote omitted). Moreover, the trial court addressed the five specific arguments raised by Johnson and concluded that they did not establish a basis to challenge the weight of the evidence, which overwhelmingly demonstrated he shot Speech. *See id*. at 6-11.

Johnson's repetition of his trial theories does not establish an abuse of discretion in the trial court's decision to deny his post-sentence motion for a new trial. The trial court carefully considered the record and rejected each of Johnson's arguments with references to the record. We agree with the court that the jury was entitled to resolve the issues raised by Hart's initial description of the suspect as a Hispanic male, the reliability of Officer Smith's identifications of Johnson from the compilation video, and the defense's closing argument that the person shown in the bar was left-handed while the shooter was right-handed. *See Clay*, 64 A.3d at 1055 (noting that "a new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion") (internal citation omitted). Furthermore, we agree that the jury was free to find Graham and Weisenbach credible notwithstanding the defense's impeachment. *See Commonwealth v. James*, 297 A.3d 755, 768 (Pa. Super. 2023) (noting that "the fact-finder is free to believe all, part, or

none of the evidence and to determine the credibility of the witnesses"), *appeal denied*, 362 MAL 2023, 2023 WL 8614241 (Pa. 2023). As noted by the trial court, the evidence against Johnson, which included the compilation video, was overwhelming, and the jury's finding that Johnson shot Speech does not shock one's sense of justice. Thus, we find no abuse of discretion in the trial court decision, and Johnson's weight of the evidence claim fails. **See Clay**, 64 A.3d at 1055.

Johnson's third issue implicates the discretionary aspects of his sentence.

A challenge to the discretionary aspects of a sentence is not absolute, but rather, "must be considered a petition for permission to appeal." **Commonwealth v. Best**, 120 A.3d 329, 348 (Pa. Super. 2015) (internal citation omitted). To reach the merits of such a claim, this Court must determine:

> (1) whether the appeal is timely; (2) whether [the defendant] preserved [the] issue; (3) whether [the defendant's] brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

**Commonwealth v. Edwards**, 71 A.3d 323, 329-30 (Pa. Super. 2013).

When we examine whether a substantial question exists, our inquiry focuses on the reasons for which the appeal is sought as stated in the Pa.R.A.P. 2119(f) concise statement. **See Commonwealth v. Radecki**, 180 A.3d 441, 468 (Pa. Super. 2018). A Rule 2119(f) statement that relies on

mere "incantations of statutory provisions and pronouncements of conclusions of law" is inadequate. *See id*.

Here, Johnson has timely appealed and filed a timely post-sentence motion challenging the discretionary aspects of the trial court's sentence. Johnson's post-sentence motion, and his Rule 1925(b) statement, asserted that the trial court abused its discretion by imposing an excessive aggregate sentence that amounted to a *de facto* life sentence and failing to consider mitigating factors. *See* Post-Sentence Motion, 7/15/22, unnumbered at 2; Rule 1925(b) Statement, 10/30/22, unnumbered at 1-2. Johnson has included a Rule 2119(f) statement in his brief. However, that statement reads:

> There is a substantial question presented about the sentence imposed . . . because the sentence is manifestly unreasonable and excessive under the circumstances of the case and contrary to the norms underlying the Sentencing Code and because the [c]ourt found [Johnson] guilty of perjury and suborning perjury where [he] had not been charged, tried or convicted of those crimes.

Johnson's Brief at 21.

We conclude Johnson has not preserved a substantial question for review. Johnson's Rule 2119(f) statement alleges that the trial court relied on uncharged crimes. *See id*. A claim that a trial court abused its discretion by improperly relying on uncharged crimes may raise a substantial question; however, Johnson did not preserve this claim at sentencing, in his post-sentence motion, or in his Rule 1925(b) statement. *See Commonwealth v. Cartrette*, 83 A.3d 1030, 1043 (Pa. Super. 2013) (*en banc*) (noting that

- 17 -

although a claim stated in a Rule 2119(f) statement could raise a substantial question, it was not preserved at sentencing or in a post-sentence motion). Therefore, Johnson has waived his assertion that the trial court improperly sentenced him for uncharged crimes.

Furthermore, Johnson's bald assertion that a sentence is manifestly unreasonable and excessive "under the circumstances of a case" is too vague to raise a substantial question. **See Radecki**, 180 A.3d at 468 (noting that this Court "does not accept bald assertions of sentencing errors"). Therefore, Johnson has failed to establish a basis for reviewing his discretionary aspects of sentencing claims.

Even if Johnson had preserved his claims and stated them in a manner to warrant appellate review, we would affirm. The trial court reasoned that it considered all relevant sentencing factors, including mitigating factors, and its finding that Johnson perjured himself and suborned perjury did not require reversal because that finding was proper and only one among other factors justifying its aggregate sentence. **See** Trial Court Opinion, 1/3/23, at 15-18; **see also Commonwealth v. Thurmond**, 407 A.2d 1357, 1359 (Pa. Super. 1979) (noting that "consideration of false testimony is justified only if certain requisites, guaranteeing the probative value of this evidence, are satisfied");[9]

---

[9] The **Thurmond** Court set forth the following criteria, and rationales, for allowing a sentencing court to consider a defendant's false testimony at trial:

*(Footnote Continued Next Page)*

- 18 -

*Commonwealth v. Bowersox*, 690 A.2d 279, 283 (Pa. Super. 1997) (concluding the belief that false testimony cannot be the sole reason for imposing an aggravated sentence).  The record supported the trial court's reasoning, *see* N.T., 7/6/22, at 41-50, and Johnson's conclusory arguments established no abuse of discretion or error of law in the trial court's sentencing decisions.  *See* Johnson's Brief at 27-28.  Thus, no relief would be due.

Judgment of sentence affirmed.

---

First, the misstatements must be willful.  Unless the defendant has willfully offered false testimony, the fact that the testimony was untrue does not of itself show that the defendant is not likely to respond to efforts at rehabilitation.  Second, the misstatement must be material, not of marginal importance.  Only material falsehoods sufficiently bear on a defendant's character to justify enhancing punishment.  Third, the verdict of guilt must necessarily establish that the defendant lied, not merely that the jury did not believe his testimony.  This requirement ensures that a defendant can receive a stiffer penalty based on giving false testimony only when the finder of fact has determined, beyond a reasonable doubt, that the testimony was willfully false.  Fourth, the verdict must be supported by sufficient credible evidence.  If the jury's verdict is to form the basis for enhancement of sentence, that verdict must have a rational foundation in evidence of record.  Fifth, the trial court, if not acting as the trier of fact, must observe the testimony allegedly false.  The cold record of the testimony and the verdict affords a meager basis for the sentencing court to determine whether the defendant's testimony demonstrated a character not likely susceptible to rehabilitation.  Finally, the court may consider the defendant's lying only as one fact among many bearing on sentence.

*Thurmond*, 407 A.2d at 1359-60 (internal citations omitted).

- 19 -

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/19/2024